**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **REGINALD ALLEN,** | : | |
| | : | |
| **Petitioner,** | : | **Case No. C-1-01-810** |
| | : | |
| v. | : | **Judge Dlott** |
| | : | |
| **ALAN LAZAROFF, WARDEN,** | : | **Magistrate Judge Sherman** |
| | : | |
| **Respondent.** | : | **Habeas Corpus** |

### WARDEN LAZAROFF'S ANSWER/RETURN OF WRIT

Warden Lazaroff denies each of the allegations asserted by Reginald Allen in his petition for writ of habeas corpus, except those expressly admitted herein.  Respondent Lazaroff moves this Court to dismiss the habeas corpus petition for the reasons stated in the accompanying Memorandum in Support.  Because this case may be decided based upon the record, no evidentiary hearing is required.

Respectfully submitted,

JIM PETRO
Attorney General

s/J. Joseph Bodine, Jr.
J. JOSEPH BODINE, JR. (0042132)
Assistant Attorney General
Corrections Litigation Section
140 East Gay Street, 16th Floor
Columbus, Ohio 43215-6001
(614) 644-7233
(614) 728-9327 facsimile
jbodine@ag.state.oh.us

TRIAL COUNSEL FOR RESPONDENT

## GENERAL DENIAL AND CUSTODY

Respondent, Allen Lazaroff [hereinafter Warden], is the Warden of the Madison Correctional Institution in London, Ohio.  As Warden, he maintains custody of Petitioner Reginald Allen [hereinafter Allen], inmate #352308 [Exhibit 1], pursuant to a judgment entry issued by the Hamilton County Court of Common Pleas noting Allen's conviction for aggravated burglary and attempted aggravated murder.

Mr. Allen brought this action seeking a writ of habeas corpus pursuant to 28 U.S.C. Section 2254.  Pursuant to this Court's Order of October 3, 2003, the Warden shows cause why the writ should not be issued.

## STATEMENT OF FACTS

The Court of Appeals of Ohio, First Appellate District, Hamilton County, Ohio set forth the facts of this case on direct appeal.  These binding factual findings "shall be presumed to be correct," and Petitioner Allen has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998):

> The evidence presented by the state was that Allen kicked the door down to gain access to the prosecuting witness's apartment, jumped on top of her, and stabbed her fifteen times with a knife in the neck and chest area.  The prosecuting witness was the mother of Allen's child and testified that she had a clear view of his face during the attack.   The prosecuting witness's daughter awoke and witnessed the attack.  Further, a neighbor testified that she heard the prosecuting witness shouting during the attack, "Reggie, don't do this * * *."
> Allen presented an alibi defense supported by this own testimony and that of other witnesses.  The jury clearly rejected Allen's defense, finding more credible the testimony of the prosecuting witness and her positive identification of Allen as the man who stabbed her.  The prosecuting witness's testimony, as corroborated by that of her daughter and neighbor, was clearly sufficient to establish all the elements of the crimes with which Allen was charged.  Furthermore, we cannot say that, in finding her testimony more credible than that of Allen and his witnesses, the jury clearly lost its way or created a manifest

2

miscarriage of justice.  *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541.

(Exhibit 12)

## STATE CONVICTION

On September 26, 1997, the Hamilton County Grand Jury issued an indictment against Reginald Allen on one count of Aggravated Burglary, one count of Attempted Aggravated Murder, two counts of Felonious Assault and one count of Domestic Violence. (Exhibit 2, Case No. B9706964) Counsel was appointed to represent Allen, who pleaded not guilty on all charges. The case proceeded to jury trial, and on November 21, 1997, Allen was found guilty on all counts.  On December 9, 1997, Allen was ordered to serve a term of ten years on the Aggravated Burglary count and ten years on the Attempted Aggravated Murder count.   The trial court ordered that the individual sentences were to be served consecutively.  Allen was not sentenced on the remaining counts because the trial court determined them to be allied offenses of the Attempted Aggravated Murder charge. (Exhibit 3).[1]

## DIRECT APPEAL

On December 22, 1997, Allen, through new counsel, filed a timely appeal with the Hamilton County Court of Appeals, First Appellate District, under Case No. C971102, and raised the following assignment of error:

> 1.  The trial court erred to the prejudice of the Defendant-Appellant in that it convicted him based upon a showing of insufficient evidence, and that his conviction was against the weight of the evidence.

(Exhibit 4, Allen's Brief)  The State filed a brief in response. (Exhibit 5)  Upon review, the Court of Appeals determined that the trial court failed to journalize a proper judgment entry setting

---

[1] In Allen's appeal, Case No. C990046, the court found that the trial court failed to properly journalize the sentencing entry.  On January 8, 1999, the trial court filed a Nunc Pro Tunc entry (Exhibit 7) to December 7, 1997.

forth Allen's plea, verdict and sentence pursuant to Crim. R. 32(B), therefore no final appealable order was recorded. On December 9, 1998, the appellate court dismissed Allen's appeal *sua sponte* for lack of jurisdiction. (Exhibit 6)  On January 8, 1999, the trial court filed a final appealable order by a Nunc Pro Tunc entry for the December 9, 1997 sentencing entry. (Exhibit 7)

## SECOND DIRECT APPEAL

Allen, through the same counsel, filed a Notice of Appeal in the First District Court of Appeals on January 20, 1999 under Case No. C990046. Allen's brief, filed on January 29, 1999, presented one assignment of error as follows:

> 1.    The trial court erred to the prejudice of the Defendant-Appellant in that it convicted him based upon a showing of insufficient evidence, and that his conviction was against the weight of the evidence.

(Exhibit 8, Brief)  On February 19, 1999, Allen, *pro se*, filed a supplement to his brief. Allen subsequently filed a *pro se* amendment to his appeal brief on April 9, 1999 but later moved to withdraw his two *pro se* briefs and have them stricken from the record. [Exhibit 9]  The court of appeals granted Allen's motion on July 15, 1999 and ordered the supplemental briefs stricken from the record. (Exhibit 10)  The State's brief is Exhibit 11. Allen's appeal proceeded on the merit brief filed by counsel, and on November 24, 1999, the court of appeals affirmed the judgment of the trial court. (Exhibit 12).

## MOTION FOR DELAYED APPEAL

On July 24, 2000, while his 26(B) motion was pending, Allen filed a motion for leave to appeal the November 24, 1999 Court of Appeals' decision. The Ohio Supreme Court denied the motion for delayed appeal on August 30, 2000. (Exhibit 28, Case No. 00-1315.)

## POST-CONVICTION RELIEF PROCEEDINGS

Mr. Allen requested post-conviction relief. Allen, *pro se*, filed a petition to vacate or set aside sentence on August 6, 1999 in accordance with Ohio Rev. Code Ann. § 2953.21. (Exhibit 14) Allen alleged ineffective assistance of trial counsel for counsel's failure to present exculpatory evidence and to object to the introduction of Allen's prior "bad acts" at trial. The State filed a memorandum in opposition on August 19, 1999. (Exhibit 15) Allen filed a response on August 30, 1999 and an amended response on September 13, 1999. (Exhibits 16 and 17) On November 9, 1999, Allen filed a motion for leave to supplement his post-conviction petition. (Exhibit 18) Allen's post-conviction petition was denied on September 3, 1999. (Exhibit 19) He appealed the trial court's decision to the court of appeals and requested review from the Supreme Court of Ohio. That request was denied on November 22, 2000.

## APPLICATION FOR REOPENING

On January 31, 2000, Allen, *pro se*, filed an application for reopening pursuant to App. R. 26(B). (Exhibit 21) The application was filed timely. In his application for reopening, Allen raised the ineffective-assistance-of-appellate-counsel claims that are the subject of his pending habeas corpus petition. For the first time during the state proceedings, he charged that his direct appeal counsel was ineffective for failing to raise the following four assignments of error:

### FIRST ASSIGMENT OF ERROR

THE TRIAL COURT COMMITTED ERROR IN PERMITTING THE STATE TO CONTINUALLY REFER TO THE APPELLANT'S PRIOR BAD ACTS AND TO ADMIT EVIDENCE THAT APPELLANT WAS A VIOLENT OFFENDER WITH A HISTORY OF DOMESTIC VIOLENCE OFFENSES IN VIOLATION OF OHIO RULES OF EVIDENCE 403 AND 404

### SECOND ASSIGNMENT OF ERROR

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES

CONSTITUTION WHEN COUNSEL'S PERFORMANCE PRIOR TO AND
DURING THE TRIAL WAS CLEARLY DEFICIENT.

### THIRD ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN PERMITTING THE GUILTY VERDICT
WHICH WAS TAINTED BY PROSECUTORIAL MISCONDUCT MADE
DURING THE TRIAL AND DURING THE OPENING AND CLOSING
STATEMENTS TO THE JURY IN VIOLATION OF THE SIXTH AND
FOURTEENTH      AMENDMENTS      TO      THE      UNITED      STATES
CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO
CONSTITUTION.

### FOURTH ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN GIVING THE APPELLANT THE
MAXIMUM SENTENCE CONTRARY TO OHIO REVISED CODE

The State filed a memorandum in opposition on March 3, 2000. (Exhibit 22)  Allen's

responded. (Exhibit 23)  On April 12, 2000, Allen moved for leave to amend his application for

reopening. (Exhibit 24)  On August 3, 2000, The Ohio Court of Appeals denied Allen's motion

for leave to amend his application and denied his application for reopening.  The appellate court

addressed Allen's claims on their merit.  The court of appeals held that appellate counsel's

performance was not deficient and that Allen suffered no prejudice from his appellate counsel's

representation. (Exhibit 25)

Allen, *pro se*, appealed to the Ohio Supreme Court on September 14, 2000 under Case

No. 00-1654.  In his Memorandum in Support of Jurisdiction, Allen set forth the following

proposition of law:

> I.      Where appellate counsel fails to raise critical issues of
> constitutional significance on direct appeal, and where these same
> issues would have resulted in a different outcome on appeal, the
> appellant has not been provided with the constitutionally protected
> right to effective assistance of counsel on direct appeal.  Thurs, the
> Appellant's first appeal as of right was not adjudicated in accord
> with due process.  Such deprivation of rights warrants the reversal
> of the Court of Appeals judgment on direct appeal and all direct

6

appeal rights restored.

(Exhibit 26).  In the text of his Memorandum in Support of Jurisdiction, Allen separately

identified each of the four sub-issues regarding his appellate counsel's ineffectiveness that he

raised in his application to reopen.  On November 22, 2000, the Ohio Supreme Court dismissed

Allen's appeal as not involving any substantial constitutional question. (Exhibit 27)

## FEDERAL HABEAS CORPUS

On November 21, 2000, Allen, through counsel, filed a Petition for Writ of Habeas

Corpus in this Court and asserted the following ground for relief:

**GROUND ONE**:  Counsel was ineffective on appeal for failing to raise
certain issues.

In the text of his petition, Allen asserts that his appellate counsel was constitutionally ineffective

for failing to raise the following four (4) trial errors:

1. He was denied a fair trial and due process of law because prejudicial "other acts" evidence was introduced at trial;

2. He was denied a fair trial and due process of law because the prosecutor committed misconduct during closing argument;

3. He was denied a fair sentencing determination because the trial court improperly sentenced him to the maximum term of imprisonment permitted by Ohio law; and

4. He was denied a fair trial and due process of law because his trial counsel failed to object to the foregoing three (3) trial errors.

## TIMELINESS, EXHAUSTION AND PROCEDURAL DEFAULT

Mr. Allen's petition for writ of habeas corpus was timely filed in accordance with the

statute of limitations imposed by 28 U.S.C. §2244.  Allen asserts a single constitutional claim

that he was denied the effective assistance of appellate counsel.  That single claim was properly

and timely filed in the Ohio courts.  Mr. Allen's appellate-ineffectiveness claim is fully

exhausted and properly preserved for federal review; therefore, this Court has jurisdiction to consider Allen's constitutional claim on the merits.

## WARDEN LAZAROFF'S ANSWER TO ALLEN'S CONSTITUTIONAL CLAIM

### I.      STANDARD OF REVIEW.

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the statutory basis for federal habeas corpus review of state criminal convictions. The guiding principle of the AEDPA is that state-court determinations of federal constitutional claims are presumed to be correct. *See Williams v. Taylor,* 529 U.S. 362, 403 (2000).

Title 28 §2254 reads:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court **shall** not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, the United States Supreme Court held as follows:

In sum, §2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under §2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or facts.

> Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

*Williams*, 529 U.S. at 412-413.

The United States Court of Appeals for the Sixth Circuit has recognized that by amending §2254(d)(1) through the AEDPA, Congress intended to place "reasonable state court judgments beyond the scope of federal review" *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998). Similarly, the *Williams* Court held "[u]nder §2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411.

The Sixth Circuit has provided further guidance by explaining how *Williams* is to be applied:

> In *Williams*, the Court held that an "unreasonable application" of federal law established by Supreme Court precedent occurs if "the state court identifies the correct legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular prisoner's case.  120 S.Ct. at 1520.  Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable."  *Id*.  Although the Court failed to specifically define "objectively reasonable," it observed that an unreasonable application of federal law is different than an incorrect application of federal law."  *Id*. at 1522.  Thus even if we believe that a state court incorrectly applied federal law, we must refuse to issue the writ of habeas corpus if we find that the state court's decision was a reasonable one.

*Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

In the event that a state court fails to fully articulate its reasoning, federal courts should conduct an independent review of the record and applicable law by focusing on the *result* of the

9

state court's decision to determine whether the state court decision is contrary to United States Supreme Court precedent, unreasonably applies clearly established Supreme Court precedent, or is based on an unreasonable determination of the facts in light of the evidence presented. *Harris v. Stovall*, 212 F.3d 940, 943 n.1 (6th Cir. 2000). "That independent review, however, is not a full, de novo review of the claims but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.* at 943.

## II.    Petitioner Allen's claims of ineffective assistance of appellate counsel are without merit.

Reginald Allen asserts a single constitutional claim in his petition for writ of habeas corpus – his appellate counsel was constitutionally ineffective for failing to raise four issues on direct appeal. In this Return of Writ, Warden Lazaroff argues that the four trial errors asserted are without merit; consequently, Allen's appellate counsel was not ineffective for choosing to winnow those claims from the direct appeal. The Ohio Court of Appeals decision on these same issues was a reasonable application of clearly established federal law; therefore, this Court should deny Allen's petition for writ of habeas corpus.

### A.    Clearly established federal law: <u>Strickland v. Washington</u>; <u>Evitts v. Lucey</u>.

The governing standard for effective assistance of counsel was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

10

*Strickland*, 466 U.S. at 687.  According to Strickland, therefore, a reviewing court must engage in a two-part analysis.

The first prong of the *Strickland* test requires a reviewing court to presume that counsel performed competently.  That presumption is strong, for the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential.  .  .  . Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689.

In order to meet his burden of proof, Petitioner Allen must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  *Id*. at 688.  Judicial scrutiny of counsel's performance must be highly deferential; indeed, this Court must presume that the challenged action might be considered sound strategy.  *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).  "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  *Strickland*, 466 U.S. at 689.

The second prong of *Strickland* requires a petitioner to demonstrate that his counsel's deficient performance had an appreciable and detrimental impact on the particular proceeding at issue.  In order to make that showing, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to overcome confidence in the outcome.

*Strickland*, 466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168, (1986); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).  The test, therefore, is whether counsel's errors have likely undermined the reliability of, or confidence in, the result.  *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996), *citing Lockhart v. Fretwell*, 506 U.S. 364 (1993).  "Counsel is constitutionally ineffective only if [his or her] performance below professional standards caused the defendant to lose what he otherwise probably would have won."  *United States v. Morrow*, 977 F. 2d 222 (6th Cir. 1992), *cert. denied*, 508 U.S. 975 (1993).

Petitioner Allen also enjoys a right to effective assistance of counsel in connection with his first appeal of right, *Evitts v. Lucey*, 469 U.S. 387 (1985), and the gist of his petition is that his appellate counsel failed to raise issues on direct appeal that Allen claims were meritorious. But competent appellate counsel is not required to raise every non-frivolous claim on direct appeal.  *Jones v. Barnes*, 463 U.S. 745 (1983); *Coleman v. Mitchell*, 268 F.3d 417, 430-31 (6th Cir. 2001).  In fact, it is often foolish to do so because the process of "'winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) *quoting Jones*, 463 U.S. at 751-52.  Appellate counsel must, of course, exercise reasonable professional judgment in determining what claims should be raised on direct appeal. *Jones*, 463 U.S. at 753; *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003).  But the presumption of effective assistance of counsel may only be overcome when "ignored issues are clearly stronger than those presented."  *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002)(*quoting Gray v. Greer*, 800 F.3d 644, 646 (7th Cir. 1986).

In his application to reopen in which he asserted the ineffectiveness of his appellate counsel, Petitioner Allen raised the same claims he asserts in his pending habeas corpus petition.

The Court of Appeals of Ohio, First Appellate District, Hamilton County, Ohio addressed those

claims on their merits:

> This cause came on to be considered upon defendant-appellant's timely application for reopening, and upon the memoranda filed by the parties. However, the state's memorandum in opposition is ineffective because it does not respond to any of appellant's arguments. Appellant's motion to amend this application is overruled because it would exceed the page limit set forth in App. R. 26(B)(4).
>
> The first assignment of error alleges that the trial court "permit[ed] the state to continually refer to the appellant's prior bad acts". The record reveals that the state used a 1988 prior conviction only to prove an element of the domestic violence count. The state also introduced evidence of a domestic violence incident that occurred about one month prior to the charges in this case, during which appellant stated to the victim, "I am going to get you, bitch". This evidence clearly tends to establish appellant's plan, intent, motive and identity, and therefore is admissible under Evid.R. 404(B) and R.C. 2945.59. See *State v. Wogenstahl* (1996), 75 Ohio St.3d 344, 366, 662 N.E.2d 311, 328. Defense counsel, not the prosecutor, brought out other charges of domestic violence that the victim had initiated and then dropped, as part of counsel's trial strategy to attack the victim's credibility. Accordingly, appellant's claim that the state impermissibly and continually referred to his prior acts is without merit.
>
> Some of the arguments raised in the second assignment of error merely repeat those made in the first assignment; others do not provide any basis for the claims as required by App. R. 26(B)(2)(d); and others go to matters of credibility or fail to allege any prejudice. Therefore, the second assignment is without merit.
>
> The third assignment is not well taken because it alleges prosecutorial misconduct based on the allegations made in the first assignment, which the court has found to be without merit.
>
> In the fourth assignment, appellant claims that the trial court did not utilize the requisite statutory criteria in sentencing him. However, all of the required findings were made and appear at Td. 47 and Tp. 376-377.
>
> In sum, the arguments raised in appellant's application show no deficient performance by appellate counsel, and no possibility of prejudice to appellant from counsel's failure to raise the alleged issues. See App.R. 26(B)(5); *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052.
>
> Therefore, the court hereby denies appellant's application for reopening.

(Exhibit 25)

The Ohio Court of Appeal's decision on these claims is correct and is entitled to deference. This Court may issue a writ of habeas corpus only if it determines that the Ohio Court of Appeal's decision was contrary to clearly established federal law or its application of that clearly established federal law was objectively unreasonable. *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). The state court fully embraced the applicable constitutional principles and applied them in a reasonable manner. Therefore, the Ohio Court's denial of Petitioner Allen's appellate ineffectiveness claims is a "reasonable state court [judgment] beyond the scope of federal review." *See Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

**B.    Appellate counsel was not constitutionally ineffective for not raising Allen's "other acts" claim because the evidence introduced at trial was admissible pursuant to Ohio Rev. Code Ann. § 2945.59 and Ohio R. Evid. 404(B), and reliance on it did not deprive Allen of a fair trial or due process of law.**

In the first two sub-issues to Petitioner Allen's appellate-ineffectiveness claim, he complains that the prosecution introduced evidence of his bad character in violation of Ohio R. Evid. 404 (B). He also argues that the prosecutor committed misconduct during closing argument by relying on evidence that was not presented at trial and by denigrating trial counsel. These combined errors, Allen asserts, violated his right to a fair trial and due process of law. Because these two claims are closely related, the Warden addresses both claims in this section.

**i.    Other Acts.**

Allen's primary complaint is that the prosecutor relied on his prior conduct to show his propensity to commit aggravated burglary and aggravated murder. Allen characterizes this evidence as prejudicial "other acts" evidence relied on by the State to prove his propensity to commit the crime of attempted aggravated murder. Allen is wrong for two reasons. The evidence Allen complains of, however, was not inadmissible "other acts" evidence. More importantly, the particular evidence Allen challenges was introduced by his trial counsel as part

14

of a comprehensive and effective trial strategy designed to demonstrate that the victim, Deborah Shepherd, had wrongly accused him of trying to kill her.  Far from being "other acts" evidence introduced by the State to prove that Allen committed a crime, the evidence at issue was introduced as a part of a cogent defense strategy.

Allen presented a two-pronged defense strategy at trial.  He presented an alibi defense, and called three family members who testified that he was at home during the time the crime was committed.  *See* Testimony of James Allen, Tp. 213 – 222 (Full testimony at Exhibit 33); Josephine Allen, Tp. 222 – 241 ; (Full testimony at Exhibit 34); and Ricardo Allen, Tp. 241 – 257.  (Full testimony at Exhibit 34 – combined with testimony of Josephine Allen);  Allen also testified that Ms. Shepherd had a habit of falsely accusing him of domestic violence every time they had an argument, and at trial, Allen's defense counsel argued that current charge just another in a long line of false charges Ms. Shepherd made against him.

To execute the second trial strategy, Mr. Allen testified on his own behalf at trial.  (Full testimony at Exhibit 35.)  On direct examination, defense counsel asked him about his relationship with Ms. Shepherd and the multiple prior domestic violence charges:

> Q.    Did Deborah have a habit of when she got angry at you charging
>        you with domestic violence?

Tp. 270.

> A.    Yes, she did.
>
> Q.    And is that why she charged you five times in the past?
>
> A.    Yes.  Most of the time –
>
> Q.    Counting this one?

A.      Yes. Most of the time it was because she got mad at me or she

thought I was messing around or cheating on her.

Tp. 271.

During closing argument, defense counsel argued that Ms. Shepherd accused Mr. Allen

of attacking her, not because he did, but because she had a habit of falsely charging him of

committing domestic violence:

You have got a situation where there is a long-term tempestuous
relationship. When she gets angry at him, she charges him. Five charges. And
the prosecutor wants to make a lot about this last charge. The police officer said, yeah,
I may have

Tp. 229. (Complete transcript of closing arguments at Exhibit 37.)

seen scrapes. He doesn't know how Deborah got those scrapes. He's charged.
That case hasn't come to fruition yet. He hasn't been convicted of that. He has
never been convicted of a domestic violence charge against Deborah.

The one from '88, he doesn't remember what all the facts are. I don't now
about you, that's almost ten years ago, that's an honest answer.

I think one thing you picked up, he probably didn't understand what
happened to him in court. It's a complex procedure and when the prosecutor calls
into question his credibility saying, didn't you do this, this, this.

He didn't know whether he plead guilty or not at one point. Is no contest
a guilty plea? Well, no. Does it result in a finding of guilty? 99 point 999 times,
yes. And we never disputed there was a conviction of that 1988 charge.

Deborah's mother says she never heard him threaten her. And from the
time that that restraining order went into effect, it appears he stayed away from
the property. There was never a violation of the restraining order.

When he wanted to give his daughter a winter coat and purse, he took it to
Deborah's

Tp. 330

Mother. For visitation purposes, the either used Deborah's mother or, according
to his mother, two days before this, Deborah brought Alexis to him at his house.

16

Now, this is a restraining order that she can enforce one way – I mean, she cannot.  She can ignore it, or she can call the police if he bothers her.

She talks about telephone harassment but the conversation is, she calls him.  This is not for all practical purposes, a healthy relationship.  But it works both ways.

Tp. 331.

Although Allen complains that the prosecution improperly relied on his past behavior to convict him, the record more accurately reflects that it was the defense that presented and relied upon most of the evidence Allen construes as inadmissible "other acts" evidence.  Allen's trial counsel presented a well-planned defense on his behalf that relied upon the evidence at issue.  Thus, Petitioner Allen cannot now complain that the *State* unfairly presented and relied upon this evidence even if it could be properly characterized as inadmissible "other acts" evidence.

It is true that the prosecution relied on two instances of prior behavior to prove its case in chief on the charges of attempted aggravated murder and domestic violence.  But neither piece of evidence was inadmissible 404(B) evidence.

One month prior to Ms. Shepherd's attack, she and Mr. Allen had another altercation.  The prosecution presented the testimony of Thomas Mullis, the police officer who investigated that complaint.  (Full testimony at Exhibit 29.)  Officer Mullis testified that he investigated and signed the complaint that was filed against Mr. Allen.  Officer Mullis testified that his investigation showed that Mr. Allen pushed Ms. Shepherd against a wall and stated, "I'm going to get you bitch."  Tp. 104.  He also testified that Ms. Shepherd's left arm was scraped in the assault.  Tp. 104.

Because of the nature of Allen's threat against Ms. Shepherd and its temporal proximity to her attempted murder (just one month prior), the evidence was properly admitted to

17

demonstrate Allen's plan, intent and motive to kill Ms. Shepherd.  Ohio Rev. Code Ann. §

2945.59 provides that:

> In any criminal case in which the defendant's motive or intent, the absence of
> mistake or accident on his part, or the defendant's scheme, plan, or system in
> doing an act is material, any acts of the defendant which tend to show his motive
> or intent, the absence of mistake or accident on his part, or the defendant's
> scheme, plan, or system in dong the act in question may be proved, whether there
> are contemporaneous with or prior or subsequent thereto, notwithstanding that
> such proof may show or tend to show the commission of another crime by
> defendant.

Ohio Rule of Evidence 404(B) also provides that:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character
> of a person in order to show that he acted in conformity therewith.  It may,
> however, be admissible for other purposes, such as proof of motive, opportunity,
> intent, preparation, plan, knowledge, identity or absence of mistake or accident.

The fact that Mr. Allen threatened to harm Ms. Shepherd shortly before her attempted murder

was properly relied upon by the prosecution to prove Allen's motive, intent and plan to kill her.

*See Ohio v. Wogenstahl*, 662 N.E.2d 311, 329 (1996)("other acts forming a unique, identifiable

plan of criminal activity are admissible to establish identity under Evid. R. 404(B)." *quoting*

*Ohio v. Jamison*, 552 N.E.2d 180, syllabus).

The state also introduced Allen's prior 1988 conviction for domestic violence only to

prove an element of the domestic violence crime charged against him.  Count 5 of Allen's

indictment specifically charged that "Reginald Allen had previously been convicted of domestic

violence or a violation of Section 3903.11, 2903.12, or 2903.13 of the Ohio Revised Code

involving a person who was a family or household member at the time of such violation, to wit:

DOMESTIC VIOLENCE, in the HAMILTON COUNTY MUNICIPAL COURT, Case No.

88CRB16973 on July 12, 1988 in violation of Section 2919.25(A) of the Ohio Revised Code . .

."  Defense counsel stipulated to the authenticity of that conviction and to its admission at trial.

Tp. 207. By doing so, defense counsel effectively limited the jury's exposure to that crime to the mere fact that Allen had been convicted of it.

Regardless of how Petitioner Allen may characterize it now, the use of either piece of evidence by the prosecution was proper under Ohio law and did not deny Allen a fair trial or due process of law. Because this is a habeas corpus proceeding and not an appeal of Allen's state conviction, a federal court does not pass upon "errors in the application of state law, especially rulings regarding the admission or exclusion of evidence." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1998). A state court evidentiary ruling should be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights. *See Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).

No such due process violation occurred at Allen's trial. The Ohio Court of Appeals correctly noted that most of the evidence Allen complains of was relied on by his own defense counsel as a strategically sound defense theory, and the existence of the 1988 domestic violence conviction was a specific element charged in Count 5 of Allen's indictment and was properly introduced by stipulation. The court of appeals also held that the use of some prior acts evidence, to the extent that they were prior acts evidence, was proper according to Ohio Rev. Code Ann. § 2945.59 and Ohio R. Evid. 404(B) as interpreted by the Supreme Court of Ohio in *Ohio v. Wogenstahl*, 662 N.E.2d 311, 329 (1996). The Ohio Court of Appeals decision on this claim was correct because it applied and respected federal constitutional law; it was reasonable, and should now be respected by this Court.

> ii. **The Prosecutor did not commit misconduct that deprived Allen of a fair trial or due process of law.**

The second sub-issue of Allen's habeas claim asserts that appellate counsel was constitutional ineffective for failing to raise the issue of prosecutorial misconduct on direct

appeal.  Specifically, Petitioner Allen claims that three instances of misconduct occurred during the prosecutor's closing argument.  (Complete transcript of closing arguments at Exhibit 37.)

1.      Allen claims that the prosecutor unfairly criticized defense counsel for blaming the crime on an unnamed witness and then calling the strategy a "cheap trick;"

2.      He claims that the prosecutor argued facts not in evidence when he said that Allen went from the front door of Ms. Shepherd's apartment directly to her bedroom; and

3.      He argues that the prosecutor unfairly "played to the sympathies of the jury," Section I (B) Allen's Memorandum in Support, when he said, "don't let this man talk you out of convicting him just like he talked Debbie Shepard [sic] out of pursuing the prior charges."  Tp. 344.

Not one of these claims amounts to constitutionally prejudicial prosecutorial misconduct. Moreover, the Ohio Court of Appeals considered these claims on the merits, and its decision to deny relief was reasonable.

The proper legal standard a federal court must apply when evaluating the alleged misconduct by a state prosecutor is well established.  The prosecutor is ordinarily entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel. *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974); *Angel v. Overberg*, 682 F.2d 605, 607-08 (6th Cir. 1982) (en banc) (*citing United States v. Leon*, 534 F.2d 667, 677 (6th Cir. 1976)); *see also United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994).  *Kincade v. Sparkman*, 175 F.3d 444, 445-46 (6th Cir. 1999).  Before habeas relief may be granted, a federal court must determine that the prosecutor's statements were so egregious as to render the trial fundamentally unfair. *Donnelly*, 416 U.S. at 645.  This determination is to be made by evaluating the totality of the circumstances surround each individual case. *Hayton v. Egeler*, 555 F.2d 599, 604 (6th Cir. 1977).  The Sixth Circuit has identified the factors to consider in weighing the extent of prosecutorial misconduct in habeas cases:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*United States v. Leon*, 534 F.2d 667, 679 (6th Cir. 1976).  However, even when reviewing prosecutorial misconduct on direct appeal, the Sixth Circuit has remarked:

> More commonly, however, the complained-of conduct will not rise to *reversible* error, notably if it is not flagrant, where proof of guilt is overwhelming, where counsel does not object and/or where the trial judge steps in and admonishes the jury [citations omitted].  Indeed, it is notable of often courts cite improper argument by a prosecutor and how seldom they reverse convictions because of it.

*United States v. Bass*, 593 F.2d 749, 757 (6th Cir. 1979).

Given this strict standard for reversal and keeping in mind that a habeas court does not sit as an appellate court with the authority to rectify mere trial errors that do not rise to the level of a deprivation of fundamental constitutional rights, the alleged instances of prosecutorial misconduct did not deprive Allen of a fair trial and due process of law.  Each statement by the prosecutor made in rebuttal argument, and each was a fair response to defense counsel's attack on the victim and defense counsel's closing argument that some other, unnamed individual attempted to kill Ms. Shepherd.

As an appropriate closing to an effective defense strategy, trial counsel argued to the jury that that someone other than Mr. Allen attacked Ms. Shepherd.  Allen raised an alibi defense and presented the testimony of three family members in support of that defense.  Logically, defense counsel argued in closing argument that if Allen was at home with his brother and parents at the time of the crime, then someone else must have attacked Ms. Shepherd:

> So she seen or talked with him that evening, according to her testimony. She seen him at one o'clock, so when somebody kicks the door in, and you remember his testimony, and she admitted she's got a boyfriend named Willie,

that Willie was angry with her, too, because she wasn't letting Willie come over, he thought she was messing around with Reggie again.

Any number of people know, *I would suggest to you, that it's probably some other boyfriend that could have done this to her*. But he was at home in bed at 3:30 on the morning of the 18th, and his brother woke him up and his brother gave him Hennessey in a cup and they talked until they fell asleep.

Tp. 331-32 (emphasis added). Later in his closing argument, defense counsel argued that if Willie was not the person who attacked Ms. Shepherd, then she was attacked by someone she did not know. "I honestly don't know if she knew her attacker or not, whether it was a boyfriend or whether it was just somebody," he argued. "But it was not Reggie." Tp. 333.

In response, the prosecutor argued:

After listening to that argument it seems to me that Mr. Donnett is admitting that all these offenses were committed against Deborah Shepherd. That he's simply contesting the identity of the attacker.

So he is saying that whoever did this, is guilty of all five counts in the indictment. And let me tell you why the evidence clearly and beyond any reasonable doubt points very blatantly at that man right there.

Number one, he's trying to say it's – he said this a couple of times – some other boyfriend. Who? Does she have a lot of boyfriends? The testimony was she had another friend that she's seeing, a man named Willie.

But there is no evidence whatsoever that he was angry at her, mad at her, especially to commit this type of act.

But all of a sudden here's a person, he is not in court, he's never called, but here's a convenient scapegoat, some man who is probably out there working, doing what he is supposed to do somewhere out in Hamilton County, and little does he know that at 1:45 in the afternoon in a jury trial he is being accused of being the one to do this to his friend.

That's what he's being accused of. And he is an easy scapegoat, he is not here, and he can't answer to that. It's a very cheap type of trick.

Tp. 333-34. (Complete transcript of closing arguments at Exhibit 37.)

Allen claims that the prosecutor's rebuttal argument shifted the burden of proof to the defense and relied upon evidence that had not been admitted at trial. It is unclear how the prosecutor's questioning who was the mystery attacker – in the face of compelling eyewitness testimony that it was Allen – unconstitutionally shifted the burden of proof to Petitioner Allen. The jury was properly instructed that the state bore the burden of proof on every element of every crime charged beyond a reasonable doubt, tp. 345 (Exhibit 38), and the jury was given a reasonable doubt instruction that comported with Ohio law and which has been repeatedly withstood constitutional scrutiny by the Sixth Circuit. Tp. 346 (Exhibit 38). *See Buell v. Mitchell*, 274 F.3d 337, 366 (6th Cir. 2001); *Thomas v. Arn*, 704 F.3d 337, 366 (6th Cir. 1993). And far from arguing facts that were not in existence, the prosecutor was correcting factual misstatements by defense counsel by relying on testimony that had been presented. In particular, trial counsel's argument that Ms. Shepherd's boyfriend, Willie, was mad at her and, presumably because of that, had a motive to kill her. The prosecutor correctly pointed out that no such evidence had been presented at trial.

Arguably, the prosecutor should not called defense counsel's closing argument a "cheap trick." But the isolated, *see Leon*, 534 F.2d at 679, "cheap trick" comment did not rise to the level of misconduct so egregious that it undermined the confidence of the trial proceeding sufficient to warrant a writ of habeas corpus; therefore, any error that may have been committed by the prosecutor by his choice of language was harmless. *Brecht v. Abrahamson*, 507 U.S. 619 641 (1993); *see also O'Neal v. McAninch*, 513 U.S. 432 (1995)(The applicable standard of harmless error requires that if "one cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Kotteakos v. United States*, 328 U.S. 750, 765 (1046)). This is especially so because

23

the prosecutor's isolated comment was not "flagrant," and because the trial transcript compellingly demonstrates that Allen's "proof of guilt is overwhelming." *Bass*, 593 F.2d 749, 757.

Ms. Shepherd positively identified Mr. Allen as her attacker, and her testimony was compelling:

> Q. Okay. Could you tell the jury in your own words what Reginald Allen did to you at around 3:30 in the morning that morning?
>
> A. Well, I was half off the bed, and half on and it was like he pinned me there in that position and he held a knife up for a minute. I said, Reggie don't do it, please don't do it." He came down with the knife and I was trying to block my chest because I felt he was trying to stab me in the chest. So I kept throwing my arms up as he was coming down with the knife. He just kept doing this, and this type of motion with two hands and I just kept throwing my arms out to block.

Tp. 150-51. (Full testimony at Exhibit 31.)

> Q. Continue on Ms. Shepherd, how did everything take place and how did it end?
>
> A. I just kept screaming as he was coming down with the knife, "Reggie stop, please." Screaming for help. Hollering and screaming. Every time he hit me with the knife I was just hollering, hoping somebody would hear me.

Tp. 152.

Somebody did hear her – Sandy Tidwell, who lived just below Ms. Shepherd. (Full testimony at Exhibit 30.) Ms. Tidwell testified that she had just come home from a party when she heard a lot of screaming from above:

> I opened up the my window to see what was going on, at first I thought it was somebody outside. I opened up the window and I heard Deborah screaming for someone to help her, and she was saying, "Why are you doing this? You going to kill me." And I just heard her scream, a lot of screaming.
>
> * * *
>
> She was screaming, "Reggie, please don't do this. Why are you doing this?" And, "Help me."

Tp. 135.

Ms. Tidwell's testimony fully and accurately corroborated Ms. Shepherd's account of the attack.  So did the testimony of Kristen Shepherd, Ms. Shepherd's daughter.  (Full testimony at Exhibit 32.)  Kristen testified that she saw Allen running out of her mother's bedroom with a knife.  Tp. 183.  And finally, the fact that Allen was the attacker was supported by the testimony of Calvin Barrett.  (Full testimony at Exhibit 36.)  Mr. Barrett was a friend of Allen's, who testified that he drove Allen to Ms. Shepherd's apartment just before the attempted aggravated murder occurred.  Tp. 301.  And Ms. Shepherd testified that she saw Mr. Barrett with Allen when she looked out the peephole of her apartment door.  Tp. 147.

Allen also claims that the prosecutor argued facts that were not in evidence when he stated that Allen went directly from the front door to Ms. Shepherd's bedroom instead of searching the apartment room by room.  But this argument was made in response to defense counsel's suggestion that Ms. Shepherd the attack may have been a random act of violence committed by a person who did not know Ms. Shepherd, and the Prosecutor's argument *was* supported by evidence presented at trial.

In closing, defense counsel argued, "I honestly don't know if she knew her attacker or not, whether it was a boyfriend or whether it was just somebody.  But it was not Reggie."  Tp. 333.   In response, the prosecutor argued that only a person who knew the layout of the apartment and where Ms. Shepherd slept could have attacked her because the attacker went straight from the front door to Ms. Shepherd's bed rather than going room to room looking for a victim.  Tp. 340.

The prosecutor's argument was supported by facts in evidence.   Allen visited Ms. Shepherd's apartment often and knew the layout.  Tp. 145.  When the attack occurred, Ms.

Shepherd heard a loud noise like her door had been kicked open. Tp. 149. She jumped when she heard the noise and she testified, "Before I got up he was above me with the knife." Tp. 150. Based on Ms. Shepherd's testimony, the attacker had to run directly from the front door to Ms. Shepherd's bed because she did not even have time to get up before her attacker was on her. There was no misconduct because the prosecutor's rebuttal argument was a fair and logical interpretation of the evidence presented at trial.

The final prong of Allen's misconduct claim alleges that unfairly played upon the sympathy of the jury when he argued that the jury should not let Allen talk it out of convicting him because it encouraged the jury to convict Allen based upon his bad character. Hardly. The prosecutor's point, taken in context with the rest of his closing argument, was that the jury should not be swayed by Allen's testimony but rather by the wealth of eyewitness testimony identifying Allen as Ms. Shepherd's attacker. It is unclear how or why this may have appealed to the jury's sympathy, but it is no more misconduct than the prosecutor's appropriate reliance on facts in evidence to rebut defense counsel's closing argument.

Allen's prosecutorial misconduct claims are not fairly supported by the trial court record. In fact, the record contradicts those claims, and appellate counsel intelligently chose not to raise claims on appeal that were not supported by fact or law. His performance, as the Ohio Court of Appeals held, was not deficient.

      **C.    Allen was properly sentenced under Ohio law, and this claim is not cognizable in federal habeas corpus proceedings.**

The third prong of Allen's constitutional claim alleges that trial counsel was ineffective for failing to object to the maximum consecutive sentences imposed by the trial court and that his appellate counsel was ineffective for failing to raise those issues on appeal. But because Allen

was sentencing in accordance with Ohio law and because he does not alleged any fundamental sentencing error governed by the Eighth Amendment, his claim must fail.

A person held in state custody in violation of rights protected by the United States Constitution may petition for a writ of habeas corpus. *Wainwright v. Goode*, 464 U.S. 78, 83-84 (1983). But habeas relief is available only if the petitioner was deprived, at some point in the state court proceedings, of a right guaranteed by the United States Constitution. *Bell v. Arn*, 536 F.2d 695 (6th Cir. 1976). It is not enough that a petitioner simply assert that a claim is a federal constitutional issue. To be cognizable in federal habeas corpus, there must be constitutional errors that were material to the outcome of the case, and that resulted in a denial of fundamental fairness to the petitioner. *Norris v. Schotten,* 146 F.3d 314, 329 (6th Cir. 1998); *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Walker v. Engle*, 703 F.2d 959 (6th Cir. 1983), *cert. denied*, 464 U.S. 951, and 464 U.S. 962 (1983).

When reviewing a federal habeas petition, a federal habeas court cannot consider any errors regarding a violation of state law or a state court's decision applying purely state law because these errors are not of a constitutional magnitude. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Watters v. Hubbard*, 725 F.2d 381, 383 (6th Cir. 1984). It is the obligation of the federal courts to accept as valid a state court's interpretation under state law of the statutes and rules of practice of that state. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

To the extent that petitioner argues a violation of state law, a federal court may review the state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the constitution, laws or treaties of the United States. 28 U.S.C. §2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.), *cert.*

*denied*, 488 U.S. 866 (1988).   A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).  " '[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition.  *Id*. (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).   Only where the error rendered the trial so fundamentally unfair as to have deprived the individual of substantive due process will habeas relief  be granted.  *Norris v. Schotten,* 146 F.3d 314, 329 (6th Cir. 1998); *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

The Ohio Court of Appeals found that the trial court properly applied state law, and observed the strictures of the state statutes in imposing the maximum sentences available in this case.  (Exhibit 25)  The trial court was careful in it sentencing consideration.  It considered the request of defense counsel that, based upon a pre-sentence investigation report, Allen could be rehabilitated with counseling.  Tp. 374.  The trial court considered and granted defense counsel's motion that Allen not be sentenced on Counts 3-5 of the indictment because they were allied offenses of Counts 1 and 2.  Tp. 377.   Mr. Allen was given an opportunity for allocution, which he took, tp. 377, and the trial court made the appropriate determination pursuant to Ohio Rev. Code Ann. § 2929.14(B) that running Allen's two sentences concurrently as opposed to consecutively would not adequately protect the public and would demean the seriousness of his offenses.  Tp.  376.  Petitioner Allen was given a careful and considerate sentencing procedure that did not violate the Bill of Rights; therefore, his appellate counsel was not ineffective for electing to forgo this issue on direct appeal.

###### D.    Allen's trial counsel was effective.

Allen asserts the ineffective assistance of his trial counsel as the final prong of his constitutional claim because he must do so.  None of the foregoing errors raised by Allen in his habeas petition were objected to at trial, rendering them procedurally defaulted.  Therefore, in order to prove that he was denied the effective assistance of appellate counsel, Allen must demonstrate that one of his asserted trial errors has merit and that his trial counsel was ineffective for failing to object to those errors at trial.  In turn, he must demonstrate that his appellate counsel erred by not raising the underlying constitutional claims under the rubric of an ineffective-assistance-of-trial-counsel claim.

None of the three trial errors Allen asserts in his petition merits habeas relief.  The Warden's argument in opposition to those claims is fully briefed in the preceding sections.  Because none of those asserted trial errors rises to the level of a federal constitutional deprivation, his trial counsel was not ineffective for failing to object to those alleged errors at trial.  But there is an equally compelling reason why Allen's ineffective-assistance-of-trial-counsel claim should fail  - his trial counsel provided him exceptional representation.

Petitioner Allen enjoyed the benefit of a comprehensive defense at his trial.  His trial counsel filed a timely notice of alibi, and presented the testimony of three witnesses in support of that defense.  Judging by the consistent line of questioning posed to those witnesses, trial counsel thoroughly investigated the defense and prepared his witnesses well.  Trial counsel fully understood the relationship between Allen and Ms. Shepherd – enough to understand and argue that because Ms. Shepherd accused Allen of domestic violence at least five times and dropped all but one of those charges, she may have falsely accused him of trying to kill her.  Trial counsel could hardly object to the prosecutor's reference to those prior charges given that they were basis

for his sound defense strategy. The fact that the defense strategy failed does not mean that Mr. Allen was denied the effective assistance of trial counsel; it means that Mr. Allen is guilty. Even so, trial counsel conscientiously assured that Allen was not even sentenced for three of the counts for which he was found guilty by timely and effectively asserting that those claims were allied offenses of Counts 1 and 2.

Petitioner Allen got what the United States Constitution strives to assure that every criminal defendant gets – he had a good lawyer and a good defense. He was not deprived of the effective assistance of counsel, nor was his appellate counsel ineffective for not challenging trial counsel's performance.

### E.    Allen's appellate counsel was effective.

In order to prevail on his ineffective-assistance-of-appellate-counsel claim, Petitioner Allen must demonstrate that his appellate counsel chose to ignore meritorious issues that were "clearly stronger than those presented" in his direct appeal. *See Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002)(*quoting Gray v. Greer*, 800 F.3d 644, 646 (7th Cir. 1986). Given that Allen's entire defense at trial was designed to prove his innocence through an alibi defense and by focusing on the victim's character, appellate counsel chose to raise an issue that was consistent with the evidence presented at trial – a sufficiency of the evidence claim. Rather than pursuing that claim in these proceedings, Allen's asserts habeas claims that are contradicted by the state-court record. To the extent that it was a choice between pursuing a claim consistent with all of the evidence trial counsel presented as a defense or claims that contradict the evidence on appeal, appellate counsel chose wisely. The Ohio Court of Appeals recognized that when it denied Allen's appellate ineffectiveness claim. The court of appeals decision was reasonable, and this Court should respect it.

## II.    CONCLUSION

Warden Lazaroff moves this honorable federal habeas corpus Court to dismiss the habeas corpus Petition for the reasons set forth herein.  Because the case can be decided from the record, no further hearing should be necessary.  *See Keeney  v. Tamayo-Reyes*, 504 U.S. 1 (1992).  This is not a waiver of hearing.

Respectfully submitted,

JIM PETRO
Attorney General


S/J. Joseph Bodine, Jr.
J. JOSEPH BODINE, JR. (0042132)
Assistant Attorney General
Corrections Litigation Section
150 East Gay Street, 16th Floor
Columbus, OH 43215-6001
(614) 644-7233
**FAX:  (614) 728-9327**

jbodine@ag.state.oh.us

TRIAL ATTORNEY FOR RESPONDENT

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing ***Warden Lazaroff/s Answer/Return of Writ*** has been forwarded to Reginald Allen, #352-308, Madison Correctional Institution, P.O. Box 740, London, Ohio  43140-0740, via the U.S. Mail, this 5th day of January, 2004.

s/J. Joseph Bodine, Jr.
fJ. JOSEPH BODINE, JR.
Assistant Attorney General
