COURT OF APPEALS

FIRST APPELLATE DISTRICT

HAMILTON COUNTY, OHIO



FILED
COURT OF APPEALS

APR 20 1998

JAMES CISSELL
CLERK OF COURTS
HAMILTON COUNTY

COST.

STATE OF OHIO          :     NO. C-9701102

      Plaintiff-Appellee     :

  vs.                    :

REGINALD ALLEN          :

      Defendant-Appellant    :

| BRIEF OF PLAINTIFF-APPELLEE |
|:---:|

**Joseph T. Deters** (#0012084P)
Prosecuting Attorney

**Ronald W. Springman, Jr.**
(#0041413P)
Assistant Prosecuting Attorney

230 E. Ninth Street, Suite 4000
Cincinnati, Ohio  45202
(513) 946-3052
Fax No. (513) 946-3021

**COUNSEL FOR PLAINTIFF-APPELLEE**

**Herbert E. Freeman** (0005364)
Attorney at Law
620 American Building
30 East Central Parkeay
Cincinnati, Ohio 45202-1118
(513) 381-8115

**COUNSEL FOR DEFENDANT-APPELLANT**

EXHIBIT

5

TABLE OF CONTENTS

Page

STATEMENT OF THE CASE

    a)   Procedural Posture . . . . . . . . . . . . . . . 1.
    b)   Statement of Facts . . . . . . . . . . . . . . . 2.

ASSIGNMENT OF ERROR

    THE TRIAL COURT ERRED TO THE PREJUDICE OF THE
DEFENDANT-APPELLANT IN THAT IT CONVICTED HIM BASED UPON A
SHOWING OF INSUFFICIENT EVIDENCE, AND THAT HIS CONVICTION
WAS AGAINST THE WEIGHT OF THE EVIDENCE . . . . . . . 4.

FIRST ISSUE PRESENTED FOR REVIEW AND ARGUMENT

    Evidence presented at trial is legally sufficient
when a trier of fact could reasonably find that the
state has produced evidence to support each element of
the offense charged. . . . . . . . . . . . . . . . . . . 4.

AUTHORITIES CITED:

State v. Thompkins, (1997) 78 Ohio St.3d 380, 678 N.E.2d
   541 . . . . . . . . . . . . . . . . . . . . . . . . . 4.
State v. Eley, (1978) 56 Ohio St.2d 169, 383 N.E.2d 132 . . . 5.
State v. Martin, (1983) 20 Ohio App.3d 172, 485 N.E.2d 717 . 5.
U.S. v. Powell, 469 U.S. 57, 105 S. Ct. 471 (1984) . . . . . 5.
Ohio Revised Code Section 2911.11 . . . . . . . . . . . . . 5.
State v. Brooks, (1995) 101 Ohio App.3d 260, 655 N.E.2d 418 . 5.
State v. Clelland, (1992) 83 Ohio App.3d 474, 615 N.E.2d 276 . 6.
State v. Green, (1984) 18 Ohio App.3d 69, 480 N.E.2d 1128 . . 6.
State v. Levingston, (1995) 106 Ohio App.3d 433, 666 N.E.2d
   312 . . . . . . . . . . . . . . . . . . . . . . . . . 6.
State v. Kilby, (1977) 50 Ohio St.2d 21, 361 N.E.2d 1336 . . 6.
State v. Deboe, (1977) 62 Ohio App.2d 192, 406 N.E.2d 536 . . 6.
State v. Woods, (1976) 48 Ohio St.2d 127, 357 N.E.2d 1059 . . 7.
State v. Lamb, (December 21, 1994) Hamilton App. No. C-940111,
   unreported . . . . . . . . . . . . . . . . . . . . . . 7.
Ohio Revised Code Section 2903.11(A) . . . . . . . . . . . . 7.
Ohio Revised Code Section 2901.22 . . . . . . . . . . . . . 7.
State v. Box, (1993) 89 Ohio App.3d 614, 626 N.E.2d 996 . . . 8.
Ohio Revised Code Section 2919.25(A) . . . . . . . . . . . . 8.

SECOND ISSUE PRESENTED FOR REVIEW AND ARGUMENT

    Weight of the evidence is best left to the trier of fact and
should not be disturbed on appeal unless there has been a
manifest miscarriage of justice . . . . . . . . . . . . . . . 9

TABLE OF CONTENTS (Con't)

Page

AUTHORITIES CITED:

State v. Thompkins, (1997) 78 Ohio St.3d 380, 678 N.E.2d 541    9.
State v. Dehass, (1967) 10 Ohio St.2d 230, 227 N.E.2d 212 . .    9.
State v. Martin, (1983) 20 Ohio App.3d 172, 485 N.E.2d 717  . 10.

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . 11.

CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . 11.

COURT OF APPEALS

FIRST APPELLATE DISTRICT

HAMILTON COUNTY, OHIO

STATE OF OHIO                          :        NO. C-9701102

        Plaintiff-Appellee          :

    vs.                                :

REGINALD ALLEN                         :        <u>BRIEF OF PLAINTIFF-APPELLEE</u>

        Defendant-Appellant        :

<u>STATEMENT OF THE CASE</u>

a)   Procedural Posture:

    This is an appeal from convictions for Aggravated burglary (R.C. §2911.11(A)(1)) (Ct.1), Attempted Aggravated Murder (R.C. §2923.02(A)) (Ct.2), Felonious Assault (R.C. §2903.11(A)(1)) (Ct.3), Felonious Assault (R.C. §2903.11(A)(2)) (Ct.4), and Domestic Violence (R.C. §2919.25(A) (Ct. 5).

    Reginald Allen (hereinafter referred to as defendant) was arrested and charged with the above offenses on September 19, 1997. The Grand Jury returned a five count indictment encompassing the above charges on September 26, 1997. A jury was impaneled and the trial began on November 19, 1997. On November 21, 1997, the jury returned a guilty verdict on all charges, and the defendant was sentenced on December 9, 1997, to the DOC for ten (10) years on both count one (1) and count two (2) to run consecutively (credit 98 days); counts three, four, and five, were merged with count two as allied offenses.

1.

A timely notice of appeal was filed on December 22, 1997, and from the judgment of the trial court, this case now stands before this Court on appeal.

b)  Statement of Facts:

On September 18, 1997, at approximately 3:30 a.m., the defendant kicked open the door to Debbie Shepard's apartment, and entered. (T.p. 149). He then went into her bedroom, climbed on top of her, and pinned her to the bed at knife point. (T.p. 150). Debbie screamed and pleaded, but to no avail. (T.p. 151). The defendant stabbed her with the knife approximately 15 times in her neck and chest area. (T.p. 151). As a result of trying to protect herself from the defendant's blade, she received multiple defensive wounds on her arms and hands as well. (T.p. 156).

The victim testified that there is no question in her mind as to the identity of the assailant. (T.p. 153). She had a clear view of his face and body during the attack, and seeming as how the two have had a prior relationship, Debbie was very familiar with the defendant. (T.p. 154).

Her testimony was corroborated by a number of witnesses during the trial. First, her daughter Kristen, was an eye witness to the violent assault. (T.p. 189). On the night of the attack, Kristen woke up to her mother screaming "stop, Reggie, don't do this." (T.p. 189). She got out of bed, and ran into her mother's bed room. (T.p. 190). There she witnessed the defendant on top of her mother stabbing her with a knife. (T.p. 190).

2.

Further, Debbie's neighbor, Stacy Tidwell, testified that on the night of the attack, she heard screams coming from Debbie's apartment. (T.p. 135-136). Specifically, she heard Debbie yell, "Reggie, don't do this ... why are you doing this." (T.p. 136). Acting upon what she heard, Stacy immediately went to call the police. (T.p. 136). She heard footsteps of a person quickly fleeing the building, but she never saw the defendant. (T.p. 136).

The defendant took the stand to testify in his own defense, and he denied all the allegations. (T.p. 258-270). During the defendant's testimony, it became clear that he has had numerous problems with Domestic Violence in the past. (T.p. 271). He has been charged with Domestic Violence five times in the past; four of those times the victim dropped the charges. In 1988, however, he was convicted. (T.p. 272). In this particular instance, the court sentenced him to probation at first, but before he left the court house, he assaulted the victim again. (T.p. 272-279). He was taken right back down to the court room and sentenced to thirty days in the Justice Center. Id.

The record reflects a long history of problems with domestic violence, and specifically, a history of committing domestic violence against Debbie. (T.p. 127, 144, 258).

In the case at bar, the jury convinced the defendant on all of the above charges; from the judgment of the trial court this case stands before this Court on appeal.

3.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT IN THAT IT CONVICTED HIM BASED UPON A SHOWING OF INSUFFICIENT EVIDENCE, AND THAT HIS CONVICTION WAS AGAINST THE WEIGHT OF THE EVIDENCE.

### FIRST ISSUE PRESENTED FOR REVIEW AND ARGUMENT

Evidence presented at trial is legally sufficient when a trier of fact could reasonably find that the state has produced evidence to support each element of the offense charged.

## ARGUMENT

The defendant claims that the trial court erred in that his convictions for Aggravated Burglary, Attempted Aggravated Murder, two counts of Felonious Assault, and Domestic violence are all against the manifest weight of the evidence, and insufficient to sustain a verdict as a matter of law. The state, however, will show that the defendant's claim is without merit. The first issue before the Court is whether the trial court's decision is insufficient as a matter of law.

The law in Ohio is well settled on the point of when it is appropriate to reverse judgment on the sufficiency of the evidence. Pursuant to State v. Thompkins, the Supreme Court of Ohio has determined that:

> 'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law ... In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.

State v. Thompkins 78 Ohio St.3d at 386. Generally, a reviewing court will not reverse a verdict where the trier of fact could

4.

reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. State v. Eley, (1978) 56 Ohio St.2d 169, 383 N.E.2d 132. Furthermore, the reviewing court should view the evidence and the inferences reasonably drawn therefrom, in the light most favorable to the prosecution. State v. Martin, (1983) 20 Ohio App.3d 172, 485 N.E.2d 717. In sum, the sufficiency of evidence involves an assessment by the reviewing court of whether evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt. U.S. v. Powell, 469, U.S. 57, 105 S. Ct. 471 (1984).

The fist sub-issue addresses whether the defendant's conviction for Aggravated Burglary was supported by sufficient evidence as a matter of law. Aggravated Burglary, as defined by the Ohio Revised Code Section 2911.11, states that:

> No person by means of force ... shall ... trespass in an occupied structure ... when another person other than an accomplice of the offender is present, with the purpose to commit in the structure any criminal offense, if any of the following apply: (1) The offender inflicts ... physical harm on another, (2) The offender has a deadly weapon ... on or about the offender's person or under the offender's control.

R.C. §2911.11(A)(1) & (2).

First, the defendant's act of kicking the door open in order to gain access to Debbie's apartment, is clearly defined by the statute as using force. See State v. Brooks, (1995) 101 Ohio App.3d 260, 655 N.E.2d 418. Second, the entering of Debbie's apartment without her consent, is trespassing as defined by the code. See State v. Clelland (1992) 83 Ohio App.3d 474, 615 N.E.2d 276.

Third, Debbie's apartment clearly qualifies as an occupied structure under the statute. See generally State v. Green, (1984) 18 Ohio App.3d 69, 480 N.E.2d 1128. Fourth, the notion that the defendant went into the dwelling with the intent to commit a crime, is evidenced by the fact that he jumped on top of her and stabbed her fifteen times. State v. Levingston, (1995) 106 Ohio App.3d 433, 666 N.E.2d 312. Further, because the defendant attacked Debbie in her apartment, it is self evident that the offense was committed in her presence. See State v. Kilby, (1977) 50 Ohio St.2d 21, 361 N.E.2d 1336. And finally, a knife is clearly a deadly weapon as defined by Revised Code Section 2923.11. State v. Deboe, (1977) 62 Ohio App.2d 192, 406 N.E.2d 536.

In conclusion, by breaking through Debbie's door and attacking her with a deadly weapon, the defendant has committed Aggravated Burglary as defined by Ohio law. It follows that all of the elements of this crime are satisfied in the record, and the defendant's conviction for Aggravated Burglary should be affirmed.

The Second Sub-issue is whether the defendant's conviction for Attempted Aggravated Murder was supported by sufficient evidence as a matter of law. Attempt, as defined by the Ohio Supreme Court, requires the defendant to have taken a substantial step in a course of conduct planned to culminate in the commission of a Crime; further, the conduct must strongly corroborate the defendant's criminal purpose. State v. Woods, (1976) 48 Ohio St.2d 127, 357 N.E.2d 1059. This Court has held that when a defendant enters an apartment by force, and attacks the victim in an extremely violent

6.

manner, the evidence is sufficient to support a conviction for attempted murder. State v. Lamb, (December 21, 1994) Hamilton App. No. C-940111, unreported.

In the case at bar, it is clear that the defendant took a substantial step in a course of conduct planned to culminate in the death of Debbie Shepherd. His actions, jumping on top of her and stabbing her approximately fifteen times in the neck and chest area, strongly corroborate the actor's criminal purpose (his intent to kill her). This court has held in the past, that evidence of this type of violent attack is sufficient to support an Attempted Murder verdict, and it should do so again. All of the elements of Aggravated Attempted Murder have been satisfied, and it therefore follows that the conviction should be affirmed.

The third sub-issue is whether there is sufficient evidence to support a conviction of two counts of Felonious Assault. Felonious Assault, as defined by Revised Code Section 2903.11, states that: No person shall knowingly cause serious physical harm to another ... by means of a deadly weapon." R.C. §2903.11(A) (1)&(2). A person acts knowingly regardless of his purpose when:

> when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge when he is aware that such circumstances probably exist.

R.C. §2901.22. Further, it is well settled that under Ohio law, a knife is a deadly weapon. State v. Walker, (1976) 47 Ohio St.2d 52. 351 N.E.2d 195. And finally, merely striking someone with an object that causes blood to pour down over the victim's body is sufficient to establish all of the elements of felonious assault.

7.

State v. Box, (1993) 89 Ohio App.3d 614, 626 N.E.2d 996.  As applied the case at bar, it is common sense to assume that the defendant was fully aware that stabbing someone with a knife can cause severe injuries; he therefore acted knowingly.  The injuries that the victim received, putting her in the hospital and leaving her permanently disfigured, easily satisfy the serious physical harm element.  And Finally, by attacking the victim with a knife, the defendant satisfied the deadly weapon element.  It follows that the record clearly reflects sufficient evidence to support a conviction for Felonious Assault, and the conviction should therefore be affirmed.

The Fourth sub-issue is whether there is sufficient evidence to support a conviction for Domestic Violence under Revised Code Section 2919.25(A).  Domestic violence is defined as the causing of physical harm to a family or household member.  See R.C. §2919.25(A).  A household member is defined as, amongst other possibilities, "the natural parent of any child of whom the offender is the other natural parent." R.C. §2919.25(E)(b).

As applied the case at bar, because the Debbie and the defendant have had a daughter together, the defendant clearly falls under this statute.  Further, it is clear that he caused serious physical harm to Debbie.  It follows that all the elements of Domestic Violence have been satisfied, and therefore the conviction should be affirmed.

8.

<u>SECOND ISSUE PRESENTED FOR REVIEW AND ARGUMENT</u>

    Weight of the evidence is best left to the trier of fact and should not be disturbed on appeal unless there has been a manifest miscarriage of justice.

<u>ARGUMENT</u>

The defendant claims that the trial court erred in that his convictions for Aggravated Burglary, Attempted Aggravated Murder, Felonious Assault, and Domestic Violence were also against the manifest weight of the evidence.

The law in Ohio is well settled on the point of when it is appropriate to reverse judgment on the manifest weight of the evidence. Pursuant to <u>State v. Thompkins</u>, (1997) 78 Ohio St.3d 380, 387, 678 N.E.2d 541, the Ohio Supreme Court has determined that the:

> weight of the evidence concerns the inclination of the greater amount of credible evidence, offered at trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.

<u>Id.</u> Furthermore, the court reviewing this question determines whether the state has appropriately carried its burden of persuasion by considering and weighing all of the evidence produced at trial. <u>Id.</u> According to the Ohio Supreme Court, in applying this standard of review, the question of credibility of conflicting testimony and the weight to be accorded certain evidence are matters left primarily to the tier of fact. <u>State v. Dehass</u>, (1967) 10 Ohio St.2d 230, 227 N.E.2d 212. And finally, reversal of

9.

a conviction based on the weight of the evidence should only be done in exceptional cases.  Id., State v. Martin, (1983) 20 Ohio App.3d 172, 485 N.E.2d 717.

In the case at bar the convictions are clearly supported by the weight of the evidence.  To corroborate the testimony of the victim, the daughter of the defendant and the victim offered eye witness testimony conveying how she watched daddy stab mommy on the bed.  Further, the next door neighbor testified that she heard all this going on, and she specifically heard the defendant's name screamed during the fray.

Finally, the defendant's credibility was cast into doubt by the fact that he has been charged with Domestic Violence five times in the past, and was convicted of Domestic Violence in 1988. Further, his alibi story and witnesses were less than convincing.

The jury must determine how much weight to accord to conflicting testimony, and it is clear from the outcome of this case that they believed the victim.  The state clearly carried its burden of persuasion in this case, and in light of the fact that cases should only be reversed on the weight of the evidence under exceptional circumstances, the decision of the trail court should be affirmed.

10.

## CONCLUSION

Appellee submits that the judgment below must be affirmed.

Respectfully,

JOSEPH T. DETERS
(#0012084P)
PROSECUTING ATTORNEY

Ronald W. Springman, Jr.
(#0041413P)
Assistant Prosecuting Attorney

230 E. Ninth Street
Suite 4000
Cincinnati, Ohio  45202

Counsel for Plaintiff-Appellee

## CERTIFICATION

I hereby certify on this _20th_ day of April, 1998, I have
posted a copy of the above entitled Brief of Plaintiff-Appellee to
counsel for the Defendant-Appellant by posting same in the United
States mail addressed to, Herbert E. Freeman, Attorney at Law, 620
American Building, 30 East Central Parkeay, Cincinnati, Ohio 45202-
1118.

Ronald W. Springman, Jr.
(#0041413P)
Assistant Prosecuting Attorney

11.

IN THE COURT OF APPEALS

FIRST APPELLATE DISTRICT OF OHIO

HAMILTON COUNTY, OHIO

STATE OF OHIO,                    :        APPEAL NO. C-940111
                                           TRIAL NO. B-936599
        Plaintiff-Appellee,      :

    vs.                           :        D E C I S I O N.

                                           PRESENTED TO THE CLERK
LOUIS LAMB, JR.,                  :        OF COURTS FOR FILING

        Defendant-Appellant.     :
                                           DEC 2 1 1994

                                           COURT OF APPEALS

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From is: Affirmed

Date of Judgment Entry on Appeal: December 21, 1994

Joseph T. Deters, Prosecuting Attorney, No. 0012084, and L. Susan
Laker, Esq., No. 0000431, Hamilton County Courthouse, Court &
Main Streets, Cincinnati, Ohio 45202, for Plaintiff-Appellee,

H. Fred Hoefle, Esq., No.0001717, 4400 Carew Tower, 441 Vine
Street, Cincinnati, Ohio 45202-3016, for Defendant-Appellant.

## PER CURIAM.

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the transcript of the proceedings, the assignments of error, the briefs and arguments of counsel.

The defendant-appellant, Louis Lamb, Jr., has taken the instant appeal from the judgment of the court below convicting him, following a jury trial, on one count of aggravated burglary, one count of attempted murder, and one count of rape. Lamb, in assignments of error numbered one through nine, alleges that his convictions on the three offenses were manifestly against the weight and the sufficiency of the evidence adduced at trial. In his tenth assignment of error, Lamb argues that the trial court erred when it overruled his motion for a mistrial. Finding none of the assignments to have merit, we affirm the judgment of the trial court.

On June 12, 1993, the victim, Stephanie Poage, and her boyfriend, Steven Schmidt, spent the evening watching television at her apartment located on Grand Avenue in Cincinnati. At approximately 1:45 a.m., Schmidt left the apartment to go home and Poage undressed and got into bed with her three-year-old son, Scott. A short time later, Poage heard noises emanating from a hallway in the apartment, followed by the appearance of Lamb at the doorway of her bedroom. Poage was acquainted with Lamb as he had previously lived in the building. Poage convinced Lamb to leave and she again locked the door to the apartment and went

back to bed. As Poage was beginning to fall asleep, Lamb again appeared in her bedroom and, without warning or provocation, jumped onto the bed and began choking Poage with such force and ferocity that she lost consciousness. When she awakened, Lamb was seated on the edge of her bed. When Poage raised her head, Lamb began choking her, again to the point where she was rendered unconscious.

When Poage awakened later that morning her neck was numb and she experienced difficulty breathing. Poage was able to walk into the bathroom, where a mirror revealed that the strap from her purse was wrapped tightly around her neck. Poage also noticed that her panties were missing; that a sanitary napkin she had been wearing the night before was on the floor; and that her son had a bruise on the side of his face. Her attempt to summon the police was frustrated by the fact that the telephone had been unplugged from the wall. Poage put on a pair of shorts and along with her son ran to a convenience store where an unidentified person telephoned the police and paramedics. Poage was taken to the hospital and was provided medical treatment for bruises on her neck, cuts on her chin and a broken blood vessel in her eye. In addition, a rape exam was performed, which revealed genital trauma. Annette Davis, a serologist with the Hamilton County Coroner's Laboratory, conducted tests on samples of semen found on Poage, her shorts and the bedding, and indicated that Lamb could not be excluded as the person who was, in fact, the source of the semen.

Lamb was subsequently arrested and charged with one count each of aggravated burglary, attempted murder and rape. After a jury trial was conducted, Lamb was found guilty as charged.

Lamb alleges, in assignments of error one through nine, that his convictions for the three offenses were manifestly against the sufficiency and weight of the evidence adduced at trial. We disagree.

In *State v. Barnes* (1986), 25 Ohio St.3d 203, 209, 495 N.E.2d 922, 927, the Ohio Supreme Court stated the following rule:

> In a criminal case a verdict can not be said as a matter of law to be manifestly against the weight or sufficiency of the evidence, where substantial evidence is offered by the state in support of all of elements of the offenses charged, and if such evidence was of sufficient probative value to sustain a conviction, the reviewing court will not reverse on the sufficiency or weight of the evidence.

The elements of aggravated burglary are contained in R.C. 2911.11(A), which provides in pertinent part that:

> No person, by force, stealth or deception, shall tres-pass in an occupied structure, as defined in section 2909.01 of the Revised Code, * * * with purpose to commit therein * * * any felony, when any of the following apply:
>
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
>
> * * *
>
> (3) The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present.

R.C. 2923.02, which in conjunction with R.C. 2903.02 defines the offense of attempted murder, prohibits any person from

4

purposely engaging in conduct which, if successful, would consti-
tute the offense of murder.

With respect to the charge of rape, the elements are set
forth in R.C. 2907.02(A)(2) as follows:

> No person shall engage in sexual conduct with another
> when the offender purposely compels the other person to
> submit by force or threat of force.

Here, the state presented compelling evidence that Lamb, by
stealth and force, entered Poage's apartment and bedroom and
attacked her in such a violent manner that she lost conscious-
ness. Lamb argues, however, that the state failed to prove that
he engaged in sexual conduct with Poage. Under the circumstanc-
es, it certainly was unlikely that Poage, after being choked into
a comatose state, could recall with any degree of certainty that
Lamb had, in fact, continued his attack by sexually assaulting
her. There was evidence presented at trial, albeit circumstan-
tial, that Poage had been raped and that Lamb was the perpetrator
of that crime. Specifically, Poage testified that her panties
were removed from her body and that a sanitary napkin she had
worn to bed that evening was on the floor of her bedroom when she
awakened the next morning. Moreover, the rape exam conducted at
the hospital revealed that Poage had sustained genital trauma
and, also, that semen was present in and about her body. Indeed,
the evidence, when considered in its entirety, demonstrated that
when Lamb surreptitiously entered the apartment on that evening,
he did so with the intent to rape Poage, and that when he vio-
lently choked Poage, first with his hands and later with the

5

purse strap, he purposely engaged in conduct, which, if successful, would have caused her death.

Under these circumstances, we are persuaded that the state offered substantial evidence in support of all of the elements of the charged offenses, and that such evidence was of sufficient probative value to sustain Lamb's convictions for those crimes.

In his tenth assignment of error, Lamb alleges that the trial court erred when it overruled his motion for a mistrial. In support of this assignment, Lamb argues that a prosecution witness, a police officer, while testifying at trial, acted improperly when she deliberately referred to inadmissible evidence before the jury. This assignment is overruled.

The decision to grant or deny a motion for mistrial is within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343. A trial court may grant a mistrial *sua sponte* or on the motion by the parties when "there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *State v. Abboud* (1983), 13 Ohio App.3d 62, 468 N.E.2d 155, 156, quoting *United States v. Perez* (1824), 22 U.S. 579, 6 L.Ed 165. An appellate court will not reverse a trial court's decision to grant or deny a motion for a mistrial absent an abuse of discretion. *Cleveland v. Walters* (Oct. 13, 1994), Cuyahoga App. No. 66999, unreported. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court acted in an unreasonable,

arbitrary or unconscionable manner.  *Blakemore v. Blakemore*
(1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.

In the instant case, the state was unable to qualify Poage's
three-year-old son, Scott, as a witness competent to testify at
trial.  Apparently, due to his age and other unspecified factors,
he had difficulty communicating with other persons.  In any
event, during direct examination the prosecutor questioned police
officer Linda Day about any questions she may have posed to
Scott.  Day replied, "I asked Scott if he saw his mom get hurt
and he nodded yes."  Based upon this statement, Lamb moved for a
mistrial.

We do not agree that the trial court abused its discretion
when it denied Lamb's motion for a mistrial.  Even assuming that
Day's response was improper and constituted hearsay, we are not
convinced that Lamb suffered any prejudice as a result of the
remark.  Clearly, Poage was the victim of a savage attack and the
statement attributed to Scott, without disclosing the identity of
the perpetrator, merely confirmed the occurrence of that tragic
incident.  In addition, Poage, during her testimony, had already
identified Lamb as the person who had attacked her while she
slept in her bed.

Under these circumstances, we hold that the trial court
properly overruled Lamb's motion for a mistrial.

Accordingly, the judgment of the trial court is affirmed.


SHANNON, P.J., KLUSMEIER and M.B. BETTMAN, JJ.

7

PLEASE NOTE:

The Court has placed of record its own entry in this case on the date of the release of this Decision.