# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

———————————————

Reginald Allen,
        Petitioner


        vs                                    Case No. 1:01cv810
                                              (Dlott, J.; Black, M.J)

Alan Lazaroff,
        Respondent



———————————————

## REPORT AND RECOMMENDATION
———————————————

        Petitioner, an inmate in state custody at the Madison Correctional Institution
in London, Ohio, through counsel, brings this action for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition,
respondent's answer, as amended,  petitioner's reply and respondent's reply.
(Docs. 1,  9, 19, 24, 26).

        On September 26, 1997, the Hamilton County, Ohio grand jury returned an
indictment charging petitioner with one count of aggravated burglary as defined in
Ohio Rev. Code § 2911.11(A)(1), one count of attempted aggravated murder as
defined in Ohio Rev. Code § 2923.02(A), two counts of felonious assault as
defined in Ohio Rev. Code §§ 2903.11(A)(1), 2903.11(A)(2), and one count of
domestic violence as defined in Ohio Rev. Code § 2919.25(A).   (Doc. 10, Ex. 2).
A jury found petitioner guilty as charged.  (Doc. 18, Tr. 369-370).  On December
9, 1997, the Court sentenced petitioner to consecutive prison terms of ten (10)
years on the aggravated burglary count  and to an additional ten (10) years on the

attempted aggravated murder count.  (Doc. 10, Ex. 3). The trial court did not sentence petitioner on the remaining counts, viewing them as allied offenses to the attempted aggravated murder charge.  (Doc. 18, Tr. 375, 377).

On December 22, 1997, petitioner through new counsel filed a timely appeal to the Ohio Court of Appeals.  (Doc. 10, Ex. 4).  On December 9, 1998, the Ohio Court of Appeals *sua sponte* dismissed the appeal for lack of jurisdiction because the trial court failed to journalize a proper judgment entry.  (*Id.*, Ex. 6).

Once the trial court corrected the problem, petitioner with the assistance of counsel, filed a timely appeal to the Ohio Court of Appeals, challenging the sufficiency of evidence to support the convictions and arguing that the convictions were against the manifest weight of the evidence.  (Doc. 10, Ex. 8).  On November 24, 1999, the Ohio Court of Appeals overruled this assignment of error and affirmed the judgment of the trial court.  (*Id.,* Ex. 12). The Court made the following findings of fact concerning the underlying offenses, which are entitled to a presumption of correctness:[1]

> The evidence presented by the state was that Allen kicked the door down to gain access to the prosecuting witness's apartment, jumped on top of her, and stabbed her fifteen times with a knife in the neck and chest area.[2] The prosecuting witness was the mother of Allen's child and testified that she had a clear view of his face during the attack.  The prosecuting witness's daughter awoke and witnessed the attack.  Further, a neighbor testified that she heard the prosecuting witness shouting during the attack, "Reggie, don't do this * * *."

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner failed to rebut the court's findings with clear and convincing evidence.

[2] Because the victim blocked petitioner's stabbing motions to her chest and neck with her hands and arms, the evidence shows that she actually sustained injuries to her hands and arms. (Doc. 18, Tr. 150-151, 156-157).

2

> Allen presented an alibi defense supported by his
> own testimony and that of other witnesses. The jury
> clearly rejected Allen's defense, finding more credible
> the testimony of the prosecuting witness and her positive
> identification of Allen as the man who stabbed her. The
> prosecuting witness's testimony, as corroborated by that
> of her daughter and neighbor, was clearly sufficient to
> establish all the elements of the crimes with which Allen
> was charged.

(*Id*. at 2).

On July 24, 2000, petitioner filed a motion for a delayed appeal to the Supreme Court of Ohio which the Court denied on August 30, 2000. (Doc. 9 at 4; Doc. 10, Ex. 28).

On August 6, 1999, petitioner filed a petition to vacate or set aside judgment pursuant to Ohio Rev. Code § 2953.21 on the ground that his trial counsel was constitutionally ineffective for failing to call Anthony Clayborn as a witness and for failing to object to the state's introduction of evidence concerning petitioner's prior "bad acts." (Doc. 10, Ex. 14). On September 3, 1999, the state trial court summarily denied relief. (*Id.*, Ex. 19). Petitioner unsuccessfully appealed the ruling to the Ohio Court of Appeals and the Supreme Court of Ohio. (Doc. 9 at 5).

On January 31, 2000, petitioner filed a *pro se* application for reopening pursuant to Ohio App. R. 26(B) arguing that his counsel on direct appeal was constitutionally ineffective for failing to raise the following four assignments of error:

FIRST ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED ERROR IN PERMITTING THE STATE TO CONTINUALLY REFER TO THE APPELLANT'S PRIOR BAD ACTS AND TO ADMIT EVIDENCE THAT APPELLANT WAS A VIOLENT OFFENDER WITH A HISTORY OF DOMESTIC VIOLENCE OFFENSES IN VIOLATION OF OHIO RULES OF EVIDENCE 403 AND 404.

SECOND ASSIGNMENT OF ERROR

3

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION WHEN COUNSEL'S PERFORMANCE PRIOR TO AND DURING THE TRIAL WAS CLEARLY DEFICIENT.

### THIRD ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN PERMITTING THE GUILTY VERDICT WHICH WAS TAINTED BY PROSECUTORIAL MISCONDUCT MADE DURING THE TRIAL AND DURING THE OPENING AND CLOSING STATEMENTS TO THE JURY IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

### FOURTH ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN GIVING THE APPELLANT THE MAXIMUM SENTENCE CONTRARY TO OHIO REVISED CODE.

(Doc. 10, Ex. 21). On April 12, 2000, petitioner moved for leave to amend his application to include the following additional assignment of error which his appellate counsel failed to raise:

> Appellant was denied effective assistance of counsel at trial where counsel failed to raise objection to the trial court imposing consecutive sentences on count one and count two, where the two offenses were allied offenses of similar import, under 2941.25, and where imposing consecutive sentences violated Double Jeopardy protections.

(Doc. 10, Ex. 24). On August 3, 2000, the Ohio Court of Appeals denied petitioner's motion for leave to amend his application and also denied his application for reopening, holding that petitioner had failed to demonstrate that his appellate counsel performed deficiently or that petitioner was prejudiced by counsel's representation. (Doc. 10, Ex. 25).

On September 14, 2000, petitioner appealed the decision to the Supreme Court of Ohio, raising the following proposition of law:

> Where appellate counsel fails to raise critical issues of constitutional significance on direct appeal, and where these same issues would have resulted in a different outcome on appeal, the appellant has not been provided with the constitutionally protected right to effective assistance of counsel on direct appeal. Thus, the Appellant's first appeal as of right was not adjudicated in accord with due process. Such deprivation of rights warrants the reversal of the Court of Appeals judgment on direct appeal and all direct appeal rights restored.

(Doc. 10, Ex. 26). On November 22, 2000, the Supreme Court of Ohio dismissed petitioner's appeal as not involving any substantial constitutional question. (*Id.,* Ex. 28).

Petitioner filed the instant petition for habeas corpus relief on the ground that his counsel on direct appeal was constitutionally ineffective. Petitioner asserts that counsel erred in not raising issues concerning the state's use of prior bad acts, prosecutorial misconduct in closing argument, sentencing errors and ineffective assistance of trial counsel. (Doc. 1, Supporting Memorandum).

## OPINION

### I. Petitioner is not entitled to habeas corpus relief on the basis of his claim that appellate counsel was ineffective for failing to challenge the prosecution's use of prior bad acts evidence, as asserted in ground one of the petition.

In his first ground for relief, petitioner contends that his appellate counsel erred in failing to challenge the state's use of evidence concerning prior domestic violence charges against petitioner.

Under the standard established by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254 (d), petitioner is not entitled to federal habeas corpus relief, unless the state court's adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable

application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998). A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.). A federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942. The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

When a state court fails to address the constitutional issues raised, the federal court conducts a *de novo* review, instead of applying the AEDPA standard of review which applies only to cases "adjudicated on the merits in state court." *Maples v. Stegall,* 340 F.3d 433, 436-437 (6th Cir. 2003) (finding that in *Wiggins v. Smith,* 123 S.Ct. 2527 (2003), Supreme Court reviewed portion of claim not analyzed by state court *de novo,* without deferring to the state court or applying

6

AEDPA's standard of reasonableness); *see Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003); *Davis v. Secretary for the Dep't of Corrections,* 341 F.3d 1310, 1312 (11th Cir. 2003).

To demonstrate that counsel's performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner made an insufficient showing on either ground. *See id.* at 697.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *See id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See id.*

In order to satisfy the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *See id.* at 694. A showing by petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this standard. *See id.* at 693. However, by the same token, petitioner need not demonstrate that his counsel's conduct "more likely than not" altered the outcome of the proceeding to establish prejudice. *See id.* Petitioner has met his burden if he shows that the decision reached would "reasonably likely have been different absent the errors." *See id.* at 695.

There were three separate instances of domestic violence charges or convictions raised by the parties in this trial. First, the parties stipulated to petitioner's domestic violence conviction of July 12, 1988 which was an element of the fifth count of domestic violence. (Doc. 18, Tr. 207, 359; Doc. 10, Ex. 2). During

cross-examination, the prosecutor also questioned petitioner about this conviction. (Doc. 18, Tr. 272-279). Second, through the victim and the investigating officer, the state introduced proof of an incident occurring at 2:30 am on August 27, 1997 which resulted in the issuance of a temporary protection order forbidding petitioner from frequenting the victim's residence. (Doc. 18, Tr. 102-105). The complaint indicated that petitioner had pushed Deborah Shepherd against the wall and had threatened her, stating "I am going to get you, bitch." (Doc. 18, Tr. 104; 143-144). The complaint also stated that petitioner inflicted scrapes on Ms. Shepherd's left arm. (*Id.,* Tr. 104). This incident occurred approximately three weeks before the offenses in this case and according to the victim grew out of petitioner's jealousy that she was dating other men. (*Id.,* Tr. 286). Finally, during the cross-examination of the victim, the following exchange took place:

Q. You charged Mr. Allen with domestic violence on or around August 27, is that correct?

A. Yes.

Q. Now, how many times in the past have you charged Mr. Allen with domestic violence?

A. About five.

Q. And what's been the outcome of those?

A. Most of them was dropped.

Q. You would charge him, drop it. Charge him, drop it. Charge him, drop it. Is that correct?

A. Yes.

Q. And on August 27 you charged him again with domestic violence?

A. Yes.

Q. That hasn't resolved itself yet?

A.  I came down he did have a lawyer present, they rescheduled it to the 24th.

(Doc. 18, Tr. 161-162).  During the defense's case, petitioner testified that Ms. Shephard filed false domestic violence charges against him when she was angry with him for seeing other women.  (*Id.,* Tr. 270-271).  On closing argument, defense counsel referred to this testimony, implying that the victim's credibility was questionable.  (*Id.,* Tr. 329).

The United States Supreme Court described the basis for excluding propensity evidence under the common law as follows:

> Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. . . . The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime.  The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.  The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

*Michelson v. United States,* 335 U.S. 469, 475-476 (1948).  Although such evidence has the potential for prejudice, it is generally not excluded when it is particularly probative in showing intent, an element of the crime, identity, malice, motive, a system of criminal activity or when the defendant has raised the issue of character or has testified and the State impeaches him. *Spencer v. Texas,* 385 U.S. 554, 560-561 (1967). The possibility of prejudice is outweighed by the validity of the State's purpose. *Id.* at 561.  The defendant's interests are protected by limiting instructions and the trial judge's discretion to exclude particularly prejudicial evidence despite its admissibility.  *Id.*

Evid.R. 404(B) of the Ohio Rules of Evidence provides:

9

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This Rule of Evidence is codified in Section 2945.59 of the Ohio Revised Code, which provides:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

The Ohio Court of Appeals addressed petitioner's claim that his counsel was constitutionally ineffective for failing to challenge the state's use of prior bad acts evidence as follows:

> The first assignment of error alleges that the trial court "permitt[ed] the state to continually refer to the appellant's prior bad acts." The record reveals that the state used a 1988 prior conviction only to prove an element of the domestic violence count. The state also introduced evidence of a domestic violence incident that occurred about one month prior to the charges in this case, during which appellant stated to the victim, "I am going to get you, bitch." This evidence clearly tends to establish appellant's plan, intent, motive and identity, and therefore is admissible under Evid.R. 404(B) and R.C. 2945.59. Defense counsel, not the prosecutor, brought out other charges of domestic violence that the victim had initiated and then dropped, as part of counsel's trial strategy to attack the victim's credibility. Accordingly, appellant's claim that the state impermissibly and continually referred to his prior acts is without merit.

10

(Doc. 10, Ex. 25).

In *State v. Nields,* 752 N.E.2d 859 (Ohio 2001), the prosecutor elicited testimony from a police officer who had responded to a domestic violence call concerning the defendant and the victim a few weeks before her murder. The Supreme Court of Ohio upheld the trial court's admission of the prior bad act evidence, explaining:

> Here, the evidence defendant complains about tended to show his motive to murder Newsome. See *State v. Broom* (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, paragraph one of the syllabus. The evidence also illustrated the tumultuous relationship between defendant and Newsome in an incident that took place just weeks before the murder. It also tended to prove the absence of accident and was evidence suggesting intent. The evidence showed defendant's strained relationship with Newsome within a month of the murder. See *State v. Wilson* (1996), 74 Ohio St.3d 381, 390, 659 N.E.2d 292, 303.

752 N.E.2d at 882; *see State v. Thompson,* No. 81322, 2003 WL 21710623, at *3-4 (Ohio Ct. App. July 24, 2003), *appeal not allowed,* 798 N.E.2d 1094 (Ohio 2003). Ohio courts have also approved of the use of evidence of acts of domestic violence to prove the identity of the perpetrator of the charged offense, when the prior acts occurred close in time to that offense and defendant denies being the perpetrator. *See Thompson,* 2003 WL 21710623, at *3-4;  *State v. Griffin,* No. C-020084, 2003 WL 21414664, at *4 (Ohio Ct. App. June 20, 2003) (evidence that defendant physically assaulted or threatened to kill his wife weeks before her death admissible to establish identity of shooter), *appeal not allowed,* 797 N.E.2d 512 (Ohio 2003); *State v. Newcomb,* No. 8-01-07, 2001 WL 1504260, at *3 (Ohio Ct. App. Nov. 27, 2001), *appeal not allowed,* 763 N.E.2d 1186 (Ohio 2002); *State v. King,* No. 13-97-12, 1997 WL 722778, at *3-4 (Ohio Ct. App. Nov. 10, 1997).

The identity of the perpetrator was a major issue in this case. In his opening statement defense counsel raised identity as an issue by conceding that the crime occurred but denying that his client was the perpetrator.  (Doc. 18, Tr. 100). In his closing argument, counsel reiterated that the issue in the case was whether or not petitioner committed the crime and suggested that one of the victim's other boyfriends likely committed the crime.  (*Id.,* Tr. 324, 331). The defense's case consisted of a series of family witnesses whose main role was to establish an alibi

for the petitioner. (*Id.,* Tr. 213-258). Most importantly, petitioner denied that he committed the crime. (*Id.,* Tr. 267).

Since identity was clearly the major issue in this case, evidence of prior domestic violence consisting of physical abuse and verbal threats by petitioner against the same victim occurring within weeks before the charged offense was relevant to prove that petitioner, rather than some other boyfriend, committed the charged offenses.  The state's introduction of evidence concerning the victim's complaint to police of an incident in which petitioner pushed, scratched and threatened to "get" her occurring in August 1997 was therefore properly admitted by the state trial court for the purpose of proving identity.

In addition, such evidence was relevant to the issue of intent[3] and motive. Petitioner's threat "I am going to get you, bitch," demonstrates his desire to hurt the victim. Petitioner's prior violent reaction to the victim's alleged relationships with other men was proof of petitioner's motive to harm or attempt to kill the victim. (*See* Doc. 18, Tr.  148). Petitioner admitted in his testimony that he was unhappy that his daughter may be raised by another man.  (Doc. 18, Tr.  285-286).

Because evidence of the August 27, 1997 incident was probative of the perpetrator's identity and petitioner's intent and motive, appellate counsel was not constitutionally deficient in failing to argue that admission of such evidence was improper.

To the extent that petitioner argues that his appellate counsel should have challenged the admission of the 1988 domestic violence conviction, his argument  is baseless because the defense stipulated to this conviction. Moreover, the state could and did properly cross-examine the petitioner concerning this conviction for the purpose of attacking his credibility.  *See* Ohio R. Evid. 609. At that point in the trial, the judge *sua sponte* instructed the jury:

> Ladies and gentlemen, the fact that he's been convicted of another
> crime cannot be used by you for any other purpose than testing his
> credibility.  When you go back there you can't say, he did this once,

---

[3]Other acts evidence may be used to establish intent even when intent is not disputed at trial.  *Newcomb*, 2001 WL 1504260, at *2.

therefore he did this other crime.  You are not allowed to do that.

(Doc. 18, Tr. 279). At the end of the case, the judge similarly instructed the jury that evidence of crimes may not be considered to prove the defendant's character and show that he acted in conformity with that character, but must be limited to determining defendant's credibility or establishing an element of a crime.  (*Id.*, Tr. 360).

The third instance of prior bad acts evidence was introduced by the defense. Defense counsel elicited from the victim evidence of several domestic violence complaints filed by her which she failed to pursue. He attempted to demonstrate that she filed such charges for vengeance, implying that she would do the same in the instant case. Because these charges were introduced by defense counsel as part of his trial strategy to discredit the victim's assertion that petitioner was the perpetrator, appellate counsel could not successfully have challenged the introduction of these other charges.

Accordingly the decision of the Ohio Court of Appeals rejecting petitioner's claim that his appellate counsel was constitutionally ineffective in failing to challenge the admission of prior acts evidence was neither contrary to nor involved an unreasonable application of the Supreme Court's decision in *Strickland* and was not unreasonable in light of the record evidence.  Since petitioner has not demonstrated that appellate counsel performed deficiently or that counsel's alleged error prejudiced the outcome of the case, petitioner has not shown that he is entitled to habeas corpus relief on the basis of his ineffective assistance of appellate counsel claim, asserted as his first ground in the petition.

## II. Petitioner is not entitled to habeas corpus relief on the basis of his claim that appellate counsel was ineffective for failing to challenge the prosecution's closing argument, as asserted in ground two of the petition.

As his second ground for relief, petitioner argues that his appellate counsel was ineffective for failing to raise the issue of prosecutorial misconduct during closing argument.[4]

---

[4]In his state application for reopening, petitioner argued, in a general way, that the prosecutor acted improperly by referring to prior bad acts evidence. (Doc. 10, Ex. 21). He did not raise the specific instances of prosecutorial misconduct in closing argument–most having

"The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982). Although preliminarily the court confronted with a prosecutorial misconduct claim must determine whether the prosecutor's conduct was improper, that is not sufficient to amount to a due process violation. *See, e.g., Darden v. Wainwright,* 477 U.S. 168, 179-180 (1986). Generally, a claim of prosecutorial misconduct is one of ordinary trial error that does not rise to the level of a constitutional violation unless the misconduct "so infected the trial with unfairness as to render the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 642-643 (1974); *see also Darden,* 477 at 181. The prosecutor's challenged conduct must be examined within the context of the entire trial to determine whether it deprived the defendant of a fair trial. *United States v. Young,* 470 U.S. 1, 11-12 (1985); *see also Angel v. Overberg,* 682 F.2d 605, 608 (6th Cir. 1982) (en banc).

Factors to be considered in weighing prosecutorial misconduct claims are: (1) the degree to which the challenged conduct has a tendency to mislead the jury and to prejudice the accused, *see Darden,* 477 U.S. at 182, *Young,* 470 U.S. at 12 ; (2) whether the conduct is isolated or extensive, *see Donnelly*, 416 U.S. at 646; (3) whether the conduct is deliberate, *see id.* at 647; (4) whether the prosecutor manipulated or misstated the evidence, *see Darden,* 477 U.S. at 182; *Berger v. United States,* 295 U.S. 78, 84-85 (1935), *overruled on other grounds by Stirone v. United States,* 361 U.S. 212 (1960); (5) the strength of the competent proof to establish the guilt of the accused, *see Darden,* 477 U.S. at 182; (6) whether the conduct was objected to by defense counsel, *see id.* at 182-183 & n. 14; *Young,* 470 U.S. at 13; and (7) whether a curative instruction was given by the trial judge,

---

nothing to do with prior bad acts--that petitioner alleges in his federal habeas corpus petition. (*See* Doc. 1, Memorandum). There is therefore a strong argument that petitioner failed to fairly present these claims to the Ohio courts, and his claims are waived on habeas corpus review. See *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S.478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977). However, because respondent did not assert a waiver defense, this Court will consider the claims on the merits. Also, because the state court did not address the particular instances of prosecutorial misconduct presented here, this Court conducts a *de novo* review of the claims, as opposed to the more deferential review under the AEDPA. *See, e.g.*, *Maples,* 340 F.3d at 436-437.

*Darden,* 477 U.S. at 182.  *See also Farmer v. Hofbauer,* No. 99-2040, 2001 WL
45475, at *3-*4 (6th Cir. Jan. 10, 2001); *Givens v. Yukins,* No. 98-2429, 2000 WL
1828484, at **6-**7 (6th Cir. Dec. 5, 2000); *Gordon v. Kelly,* No. 98-1905, 2000
WL 145144, at **7  (6th Cir. Feb. 1, 2000); *Pritchett v. Pitcher,* 117 F.3d 959, 964
(6th Cir.) (citing *Serra v. Michigan Dep't of Corrections,* 4 F.3d 1348, 1355 (6th Cir.
1993), *cert. denied,* 510 U.S. 1201 (1994)), *cert. denied,* 522 U.S. 1001 (1997).

    The cases of  *Darden v. Wainwright,* 477 U.S. 168, 179-180 (1986) and
*Donnelly v. DeChristoforo,* 416 U.S. 637, 642-643 (1974) provide examples of how
the United States Supreme Court applies these factors. In *Darden v. Wainwright,*
477 U.S. 168, 179-180 (1986), the United States Supreme Court declined to find a
due process violation when the prosecutor made improper comments in his closing
argument including calling the defendant an animal, implying that the death penalty
was the only guarantee against defendant's future acts,  blaming the Division of
Corrections because defendant was on a weekend furlough when the crime occurred
and making offensive comments reflecting an emotional reaction to the case.  The
Supreme Court was persuaded that petitioner's trial was a fair one because the
prosecutor's argument did not manipulate or misstate the evidence, the prosecutor's
comments were responsive to the opening summation of the defense, the court gave
an instruction that the decision was to be made on the basis of the evidence alone
and  not on counsel's argument, the weight of the evidence against petitioner was
heavy and the defense counsel had an opportunity to rebut the prosecution's
improper arguments and did so effectively. 477 U.S. at 181-182.  In *Donnelly v.
DeChristoforo,* 416 U.S. 637, 642-643 (1974), the prosecutor stated in closing
argument that the defendant hopes that the jury finds him guilty of a lesser offense,
which the First Circuit Court of Appeals on habeas corpus review concluded
implied that petitioner had unsuccessfully sought to plead to a lesser charge.  416
U.S. at 640.  Because the remark was ambiguous, was "but one moment in an
extended trial," and was followed by an instruction that the statement could not be
considered as evidence, the Supreme Court ruled that the comment did not deny
petitioner due process.  *Id.* at 644-645.

    Petitioner cites the following passage from the prosecutor's closing argument
as improper:

        But all of a sudden here's a person, he is not in court, he's never
    called, but here's a convenient scapegoat, some man who is probably
    out there working, doing what he is supposed to do somewhere out in

> Hamilton County, and little does he know that at 1:45 in the afternoon in a jury trial he is being accused of being the one to do this to his friend.
>
> That's what he is being accused of.  And he is an easy scapegoat, he is not here, and he can't answer to that.  It's a very cheap type of a trick.

(Doc. 18, Tr. 333-334).  Petitioner argues that the closing argument was objectionable because it shifted the burden of proof to the defense, it referred to evidence not before the jury and it insulted defense counsel, calling his argument a "cheap trick."

Although the "invited response rule" is not to be used as an excuse for improper argument, a prosecutor's comments are to be evaluated in light of the defense argument that preceded them. *Darden v. Wainwright,* 477 U.S. 168, 178 (1986);  *United States v. Young,* 470 U.S. 1, 11 (1985); *see United States v. Briggs,* 27 Fed.Appx. 547, 551, 2001 WL 1609849, at **3 (6th Cir. Dec. 12, 2001) (and cases cited therein), *cert. denied,* 535 U.S. 1011 (2002);  *Gordon v. Kelly,* No. 98-1905, 2000 WL 145144, at **7 (6th Cir. Feb. 1, 2000); *United States v. Hickey,* 917 F.2d 901, 905 (6th Cir. 1990). The following passages that preceded the objectionable statements, also from the prosecutor's closing argument, help to put the prosecutor's comments in proper context:

> Number one, he's [defense counsel] trying to say it's  – he said this a couple of times –some other boyfriend.  Who?  Does she have a lot of boyfriends?  The testimony was she had one other friend that she's seeing, a man named Willie.
>
> But there is no evidence whatsoever that he was angry at her, mad at her, especially to commit this type of act.

(Doc. 18, Tr. 333-334).  These statements show that the prosecutor was directly responding to statements made by defense counsel in closing argument that someone else committed this crime.  Defense counsel said: "I would suggest to you, that it's probably some other boyfriend that could have done this to her."  (Doc. 18, Tr. 331).  He further stated: "I honestly don't know if she knew her attacker or not, whether it was a boyfriend or whether it was just somebody.  But it was not

16

Reggie." (*Id.,* Tr. 333).

The prosecutor did not suggest that legally the defense had the burden of proving the identity of the attacker. Instead, he accurately, albeit sarcastically, represented that the defense had argued that someone else had committed the crime but there was no evidence of that introduced. These comments do not improperly portray the burden of proof in this case. *Cf. Spencer v. Elo,* No. 02-1840, 2003 WL 21805270, at *2 (6th Cir. Aug. 5, 2003) (prosecutor did not shift burden of proof when he mentioned defense counsel's failure to call certain witnesses because he was responding to defense counsel's statements that prosecution had failed to present witnesses to corroborate events), *cert. denied,* 124 S.Ct. 2396 (2004). In his closing argument, defense counsel, repeatedly clarified that the state had the burden of proof by stating, for example: "And the issue is, we don't have to prove it was not Reggie. They have to prove it was." (Doc. 18, Tr. 324-325, 328, 333). In his charge to the jury, the trial court stated that in order to find the defendant guilty the jury had to find that "the state has proved each and every element of each offense beyond a reasonable doubt." (Doc. 18, Tr. 345). The jury instructions, together with defense counsel's statements concerning the government's burden of proof, served to neutralize any remote implication that petitioner had the burden of demonstrating that someone other than petitioner was the individual responsible for the crimes. Accordingly, the prosecution's statement did not improperly shift the burden of proof.

Petitioner also objected to the prosecutor's reference to an alternative perpetrator because it was based on evidence outside the record. Since the defense initially raised the possibility that another boyfriend perpetrated this crime which was not substantiated by the evidence, the prosecutor had no choice but to refer to that same evidence outside the record in his response. While the prosecutor did so in a somewhat dramatic way, referring to an illusive, unsuspecting person as the culprit, that portrayal was merely a tool for demonstrating the speculative nature of the defense's claim of a different perpetrator. Moreover, the trial judge admonished the jury that the closing arguments are designed to assist the jury, but they are not evidence. (Doc. 18, Tr. 348). His instruction helped secure the fairness of the trial by encouraging the jury to base its verdict only on the evidence introduced at trial, not on the theoretical possibilities proposed by the lawyers.

The prosecutor's use of the term "cheap type of trick" verges on the improper. However, because it was an isolated remark and defense counsel did not

17

object and because the evidence in this case was overwhelming, a due process violation did not ensue.

Petitioner also finds objectionable the prosecutor's statement that the perpetrator went straight to the victim's bedroom demonstrating his familiarity with the apartment. Petitioner argues that there was no evidence of the perpetrator's path once he entered the victim's household. The prosecutor's statement was a reasonable inference from the testimony of the victim. She testified that right after she heard her door kicked in, petitioner was on top of her with a knife. (Doc. 18, Tr. 150). Because it took him no time to find her, the prosecutor reasonably assumed that the perpetrator went directly to the victim's bedroom.

Petitioner takes issue with the prosecutor's statement that petitioner was only upset that he hadn't "finish[ed] the job" for the reason that it was not based on evidence in the case. (Doc. 18, Tr. 344). In his closing argument, the prosecutor argues:

> And it's interesting that he told you that he was concerned, he said, when he heard about this attack, for his daughter. And he cried. And the other kids.
>
> But he never told you that he was concerned for Debbie Shepherd, did he? Did he ever go to the hospital? Did he ever try to see her that day? He never did. He was just upset that he didn't finish the job. When his stepdaughter came in the room and saw him doing it he had to leave.

(*Id.*). When petitioner was questioned about his reaction to hearing about the stabbing, he merely responded that he was concerned for his daughter who had witnessed the attack. (Doc. 18, Tr. 265). He did not respond that he was concerned about the victim. (*Id.*). Because petitioner stabbed the victim fifteen times and aimed for her chest, it was reasonable for the prosecutor to infer that petitioner intended to kill her and that petitioner was upset when his efforts were cut short by the presence of his stepdaughter screaming for him to stop. (Doc. 18, Tr. 151, 152). The prosecutor's statements were based on reasonable inferences from the record evidence, and for that reason were not improper.

At the end of his closing argument, the prosecutor appealed to the jury by

18

saying: "Don't let this man talk you out of convicting him just like he talked Debbie Shepherd out of pursuing the prior charges. Find him guilty." (Doc. 18, Tr. 344). Petitioner objects to this statement because it encourages the jury to convict based on petitioner's prior bad acts and plays on the jury's sympathies not to let a "batterer" go free. (*See* Doc. 1, Memorandum, Section I B). The prosecutor's statement alludes to the victim's testimony that despite petitioner's violent acts toward her, "[h]e found a way where we got back together" by saying he was sorry and making her believe that the behaviors would not be repeated. (Doc. 18, Tr. 176). She acknowledged that she was wrong to believe him. (*Id.*). The prosecutor's final argument to the jury suggests that they should not be swayed by petitioner's testimony denying the crime because he is not trustworthy or believable. The interpretation of the prosecutor's statement proposed by petitioner, that petitioner should be convicted because he is a batterer, is a stretch.

For these reasons, petitioner has failed to demonstrate that a "reasonable probability" exists that the results of the proceeding would have been different if his appellate counsel had raised these alleged instances of prosecutorial misconduct during the state's closing argument. Petitioner has not met his burden of showing that appellate counsel prejudiced the outcome of the criminal proceedings by his failure to present these claims on direct appeal. Petitioner is therefore not entitled to habeas corpus relief based on his claim that his appellate counsel was ineffective for failing to challenge the prosecutor's closing argument, asserted in ground two of the petition.

### III. Petitioner is not entitled to habeas corpus relief on the basis of his claim that appellate counsel was ineffective for failing to challenge sentencing errors, as asserted in ground three of the petition.

As his third ground for relief, petitioner contends that his appellate counsel was constitutionally ineffective for failing to challenge the judge's imposition of consecutive, maximum sentences and sentences on both aggravated burglary and attempted aggravated murder which petitioner claims are allied offenses of similar import.

Under Ohio Rev. Code § 2929.14(B), the sentencing judge must impose the minimum prison term unless the offender was either serving a prison term at the time of the offense or previously served a prison term or the shortest term would "demean the seriousness of the offender's conduct" or "not adequately protect the

19

public from future crime." Under Ohio Rev. Code § 2929.14(C), a trial court may impose the maximum sentence for 1) those offenders committing the worst forms of the offense; 2) those posing the greatest likelihood of committing further crimes; 3) major drug offenders; or 4) repeat violent offenders. In this case, the trial judge found that the shortest prison term would not adequately protect the public and would demean the seriousness of the crime. (Doc. 18, Tr. 376; Doc. 10, Ex. 3). In addition, the judge determined that petitioner committed the worse form of the offense and posed the greatest likelihood of recidivism. (*Id.*). The Ohio Court of Appeals held that the trial court made all the requisite statutory findings in sentencing petitioner. (Doc. 10, Ex. 25 at 2).

In his habeas corpus petition, petitioner takes issue with the judge's finding that he committed the worst form of the offense. The trial judge's finding that petitioner "slashed this women repeatedly" supports the court's finding. (Doc. 18, Tr. 377). Petitioner broke into his ex-girlfriend's apartment and attacked her in her bed with a knife, slashing her fifteen times in front of her young children.

Accordingly the decision of the Ohio Court of Appeals rejecting petitioner's claim that his appellate counsel was constitutionally ineffective in failing to challenge the imposition of maximum sentences was neither contrary to nor involved an unreasonable application of the Supreme Court's decision in *Strickland* and was not unreasonable in light of the record evidence.

With respect to petitioner's contention that appellate counsel was inadequate for failing to challenge the trial court's imposition of consecutive sentences, that claim was not clearly presented in petitioner's application for reopening in state court. In his fourth assignment of error in his application, petitioner focused on the imposition of maximum sentences. (Doc. 10, Ex. 21 at 3). Accordingly, it is not likely that the state appellate court's determination upholding the trial court's sentencing findings included the issue of consecutive sentences. Because petitioner did not provide the state courts with an opportunity to address the issue, petitioner's claim is subject to waiver on habeas corpus review and this Court is precluded from considering the claim absent cause and prejudice or a fundamental miscarriage of justice. *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Engle,* 456 U.S. at 129; *Wainwright ,* 433 U.S. at 87. However, respondent did not raise a waiver defense in these proceedings. Therefore, this Court will assume *arguendo* that the issue is not waived and address the merits of petitioner's claim.

Petitioner, in his habeas petition and accompanying memorandum, states in a conclusory fashion that the trial court's findings on consecutive sentences were inadequate. (Doc. 1, Memorandum, Section I C).  Petitioner cites two requirements under Ohio Rev. Code § 2929.14(E)(4) governing the imposition of consecutive sentences which apparently he believes were not satisfied.  First, the Court must find that the sentence is necessary to protect the public from future crime or to punish the offender; and second, the Court must find that one of the following applies: (a) the offender committed the offenses while awaiting trial or sentencing, under sanction or under post- release control; (b) the harm caused by the multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of his offense; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime. *See* Ohio Rev. Code § 2929.14(E)(4).  In this case, the trial court found that petitioner was under community control at the time the offense was committed and that the harm caused was great or unusual.  (Doc. 18, Tr. 376-377, Doc. 10, Ex. 3). In addition, he found that the shortest term would not adequately protect the public.  (*Id.*).  Accordingly, the trial court did make the findings that petitioner contends were lacking and appellate counsel was therefore not deficient for failing to raise this issue.

In his reply to the return of writ, petitioner cites the case of *State v. Comer*, 793 N.E.2d 473, 477 (Ohio 2003)[5], for the proposition that a trial court must align

---

[5]In this case, the state trial court made sentencing findings orally at the sentencing hearing and also recorded the statutory findings on a form entitled "Felony Sentencing Findings" which consisted of a checklist of the sentencing requirements.  (*See* Doc. 10, Ex. 3).  In *State v. Comer*, 793 N.E.2d 473 (Ohio 2003), the Supreme Court of Ohio held that pursuant to Ohio Rev. Code § 2929.14(E)(4) and § 2929.19(B)(2) (c), when imposing consecutive sentences, and pursuant to § 2929.14(B) when imposing a non-minimum sentence on a first offender, a trial court is required to make the statutory findings orally at the sentencing hearing. Before *Comer*, there had been a split of authority as to whether the findings could be made in written form in a journal entry or had to be made orally at the sentencing hearing. *Comer*, 793 N.E.2d at 467. Prior to the *Comer* decision, the Ohio Court of Appeals, First Appellate District, held that it was sufficient if the findings were marked on a felony sentencing worksheet, and did not require the state trial court to verbalize them at the sentencing hearing.  *See State v. Nyel*, No. C-020640, 2003 WL 22149318, at *3 (Ohio Ct. App. Sept. 19, 2003), *appeal not allowed*, 802 N.E.2d 154 (Ohio 2004).  The *Comer* Court determined that appellate counsel could not be considered ineffective for failing to challenge the trial court's failure to make the findings at the sentencing hearing when the appellate district at the time of the appeal did not require oral findings.  793 N.E.2d at 465.

each reason with each finding to support imposition of consecutive sentences. Because the *Comer* decision was issued in 2003, approximately five years after appellate counsel filed his direct appeal, appellate counsel cannot reasonably be held deficient for his failure to rely on the decision.

Petitioner also contends that his appellate counsel was deficient for not challenging his sentences on both aggravated burglary and aggravated attempted murder on the ground that the offenses were allied offenses of similar import which should have merged for sentencing purposes pursuant to Ohio Rev. Code § 2941.25. [6] The Ohio Courts have held that these two crimes are not allied offenses in part because attempted murder does not require a trespass into an occupied structure. *See, e.g., State v. Frazier*, 652 N.E.2d 1000 (Ohio 1995); *State v. Yun,* No. 2000CA00276, 2001 WL 1082354, at *5 (Ohio Ct. App. Sept. 10, 2001); *State v. Coleman,* No. 1-99-53, 1999 WL 1037999 at *2 (Ohio Ct. App. Nov. 16, 1999) (and cases cited therein); *State v. Lockhart,* No. 74113, 1999 WL 728354, at *1 (Ohio Ct. App. Sept. 16, 1999). Since appellate counsel's challenge to the individual sentences for aggravated burglary and attempted aggravated murder as allied offenses would not have been successful, petitioner was not prejudiced by appellate counsel's failure to raise this issue.

For these reasons, petitioner has not demonstrated that his counsel on appeal was constitutionally ineffective for his failure to challenge petitioner's sentence. Accordingly, petitioner is not entitled to habeas corpus relief with respect to his third ground for relief.

**IV. Petitioner is not entitled to habeas corpus relief on the basis of his claim that appellate counsel was constitutionally ineffective for failing to raise ineffective assistance of trial counsel claims, as asserted in ground four of the petition.**

As his fourth ground for relief, petitioner contends that his appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel claims on appeal. One such claim identified by petitioner is that trial counsel was

---

[6]Petitioner raised this issue in his motion to amend his application for reopening, which the Ohio Court of Appeals denied. (Doc. 10, Exs. 24, 25). Since there is no state court decision on this issue, this Court conducts a *de novo* review, instead of the more deferential review under the AEDPA.

constitutionally ineffective for not objecting to the state's introduction of prior bad acts. Since the  admission of petitioner's domestic violence conviction and an August 1997 incident resulting in a domestic violence charge was for legally permissible purposes, *see* section I, *supra,*  trial counsel was not deficient in failing to object and petitioner was not prejudiced by his failure to do so.  For this reason, appellate counsel was not constitutionally ineffective in failing to raise this claim of defense counsel error.

In a related claim, petitioner argues that appellate representation was lacking when counsel failed to allege on appeal that trial counsel was remiss in not requesting a limiting instruction with respect to the state's introduction of the August 1997 domestic violence incident.[7]  Trial counsel used the prior domestic violence charges as support for his argument that the victim falsely accused petitioner of attempted murder in this case, just as she had previously filed numerous, unsubstantiated charges against petitioner solely because she was angry with him. (*See* Doc. 18, Tr. 161-162, 270-271,  329).  An instruction limiting the use of the August 1997 incident to the issues of identity, motive and intent would be contrary to defense counsel's trial strategy of using the domestic violence charges to raise questions about the victim's credibility. Moreover, defense counsel may not have thought it wise to advise the jury that such evidence could be used for the purpose of establishing identity, intent or motive because petitioner's threat that he would "get" the victim during this incident was particularly strong evidence that he was the perpetrator. *Cf.  Ashe v. Jones,* No. 98-1324, 2000 WL 263342, at **6-**7 (6th Cir. Feb. 29, 2000) (citing *Stamps v. Reese,* 834 F.2d 1269, 1276 (6th Cir. 1987), *cert. denied,* 485 U.S. 980 (1988)) (failure to request limiting instruction can be part of reasonable trial strategy).  Accordingly, trial counsel was not objectively unreasonable in failing to request a limiting instruction nor was there a reasonable probability that the outcome of the trial would have been different had he requested the instruction.  Since petitioner has not demonstrated that trial counsel was constitutionally ineffective for failing to request such instruction, he also has not shown that appellate counsel was ineffective in failing to flag this issue on appeal.

Petitioner also submits that his appellate counsel was constitutionally

---

[7]Petitioner mentions this issue in his first ground for relief, but because it relates to his trial counsel's ineffectiveness concerning prior bad acts evidence, the Court considers the claim in this section. (*See* Doc. 1, Supporting Memorandum, Section I A).

ineffective when he failed to identity as error trial counsel's failure to use the victim's medical records to demonstrate that her injuries were not as severe as she claimed. Petitioner asserts that the medical report was necessary to correct the false impression that the victim was wounded on her chest and neck, when she actually sustained injuries to her hand and arms. (Doc. 10, Ex. 24 at 3). The testimony at trial was that the victim sustained injuries to her arms and hands and she had blood from her neck down. (Doc. 18, Tr. 111, 115-117, 156-157). Neither the victim nor the investigating officer testified that Ms. Shephard suffered stab wounds to the chest or neck, as petitioner suggests. (*Id.*). The victim testified that petitioner tried to stab her in the chest, but that she blocked his advances with her arms. (Doc. 18, Tr. 150-151). In any event, the medical report was introduced into evidence for the jury to review. (Doc. 18, Tr. 159, 209). Under these circumstances, petitioner has not demonstrated that trial counsel performed in a substandard fashion. Petitioner has also not shown that absent defense counsel's failure to use the medical records to impeach the victim about the severity of her wounds, a reasonable probability exists that the outcome of this case would be different. Without a showing of prejudice, petitioner has not satisfied the standard for constitutionally ineffective assistance of counsel at trial. Accordingly, appellate counsel's failure to identify trial counsel's actions as constitutional error also do not amount to a constitutional violation.

In his application for reopening filed in the Ohio Court of Appeals petitioner challenged the effectiveness of his appellate counsel for his failure to identify as error his trial counsel's inadequate use of the victim's medical records and trial counsel's approach to the state's introduction of bad act evidence. The Ohio Court of Appeals rejected these claims. (Doc. 10, Ex. 25 at 2). For the reasons stated above, the decision of the Ohio Court of Appeals was neither contrary to nor involved an unreasonable application of the United States Supreme Court's decision in *Strickland* and was not unreasonable in light of the record evidence.

Petitioner further contends that his appellate counsel was ineffective for failing to assert a claim that trial counsel was constitutionally ineffective for neglecting to object to statements made by the prosecutor in his closing argument. Since the statements at issue were either not improper or did not compromise the fairness of the trial, *see* section II, *supra,* trial counsel was not deficient in failing to object to them and petitioner was not prejudiced by his failure to do so. For this reason, appellate counsel was not ineffective for omitting this claim of ineffective

assistance of trial counsel on appeal.[8]

As another instance of ineffective appellate representation, petitioner points to appellate counsel's failure to assert that trial counsel erred by not objecting to sentencing errors.  Since the sentencing errors identified by petitioner lacked merit, *see* section III, *supra,* trial counsel was not remiss in failing to object and petitioner was not prejudiced by his failure to do so.   For this reason, petitioner has not shown that appellate counsel was ineffective in failing to identify trial counsel's alleged ineffectiveness at sentencing.[9]

Accordingly, petitioner is not entitled to habeas corpus relief with respect to his fourth ground for relief.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

---

[8]Although in his state application for reopening, petitioner did argue that his appellate counsel was inadequate for failing to raise a claim of  trial counsel's inadequacy with respect to certain alleged instances of prosecutorial misconduct, he did not challenge trial counsel's failure to object to the statements in the prosecutor's closing argument which are at issue in these proceedings. (Doc. 10, Ex. 21 at 6). Petitioner's claim that appellate counsel was ineffective on this latter ground is therefore subject to waiver, but respondent did not raise this defense. Moreover, since there is no state court decision with respect to these claims, this Court conducts a *de novo* review, instead of the more deferential review under the AEDPA.

[9]In his state application for reopening, petitioner did not base appellate counsel's deficiencies on his failure to raise a claim that trial counsel was ineffective at sentencing. (*See* Doc. 10, Ex. 21). In his motion to amend his application for reopening, petitioner inserted a claim that appellate counsel erred by not raising a challenge to trial counsel's failure to object to sentences on allied offenses of similar import. (Doc. 10, Ex. 24 at 6). The Ohio Court of Appeals denied the  motion to amend on a procedural ground. (Doc. 10, Ex. 25). As a result, the Ohio Court of Appeals did not consider petitioner's charge  that appellate representation was lacking because counsel failed to raise a claim that trial counsel was inadequate at sentencing. Since there is no state court decision with respect to this claim, this Court conducts a *de novo* review, instead of the more deferential review under the AEDPA. In addition, although petitioner's claim that appellate counsel was constitutionally deficient for failure to identify trial counsel's inadequate representation at sentencing is arguably subject to waiver in these proceedings, respondent failed to present a waiver defense and accordingly this Court considers the claim.

2.  A certificate of appealability should not issue with respect to petitioner's grounds for relief because petitioner has failed to make a substantial showing of the denial of a constitutional right remediable in this federal habeas corpus proceeding. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  Petitioner has not shown that reasonable jurists could debate whether these claims should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell,* 537 U.S. 322, 323-324 (2003) (quoting *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

3.  With respect to any application by petitioner for *in forma pauperis* status for the purposes of pursuing an appeal of an order adopting this report and recommendation,  this Court should certify that pursuant to 28 U.S.C. § 1915 (a) an appeal of this order would not be taken in "good faith," and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis*.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  July 29, 2004              S/Timothy S. Black
hr                                Timothy S.  Black
                                  United States Magistrate Judge

J:\ROSENBEH\2254(2004)\01-810iaac.wpd

26

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

_____

Reginald Allen,
      Petitioner


    vs                           Case No. 1:01cv810
                                 (Dlott, J.; Black, M.J)

Alan Lazaroff,
      Respondent

_____

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled action. Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

27